No. 112,209

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL A. SCHMIDT,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution permits warrantless breath tests incident to arrests for drunk driving but not warrantless blood tests. Moreover, motorists may not be criminally punished for refusing to submit to a warrantless blood draw and consent to a warrantless blood test cannot be premised on a threat of criminal penalties for refusal to submit to the test.

2.

In this case where a law enforcement officer requested a motorist to submit to a warrantless blood test in reliance on the Kansas Implied Consent Law prior to the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. __, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), the results of the blood test are admissible under the good-faith exception to the exclusionary rule.

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed December 16, 2016. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

1

*Christopher W.D. Lyon*, assistant county attorney, *Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and LEBEN, JJ.

MALONE, C.J.:  Following an injury accident in September 2012, Michael Schmidt was arrested on suspicion of driving while under the influence of alcohol (DUI). In accordance with the Kansas Implied Consent Law, K.S.A. 2012 Supp. 8-1001, the arresting officer requested that Schmidt submit to a blood test and informed him, as required by the implied consent advisories, that failure to submit to the test constituted a separate crime. Schmidt acquiesced to the test, and the results showed that his blood-alcohol content was above the legal limit. Following the denial of Schmidt's motion to suppress the results of the warrantless blood test, the district court found Schmidt guilty of DUI.

This appeal raises two issues:  (1) Does a warrantless blood draw authorized by the Kansas Implied Consent Law fall under the consent exception to the warrant requirement when the officer advised the motorist that failure to submit to the test constituted a separate crime? (2) Can the results of the blood test in this case be admitted under the good-faith exception to the exclusionary rule? We hold the warrantless blood draw cannot be upheld based on Schmidt's consent, but the blood test results are still admissible under the good-faith exception to the exclusionary rule.

FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2012, at approximately 8:31 p.m., Schmidt was involved in an injury accident on Emmeran Road in Ellis County, Kansas. At 8:46 p.m., Deputy Thomas Garner arrived on the scene and assisted EMS, who had placed Schmidt on the backboard in order to transport him to the Hays Medical Center Hospital. As Garner was holding a flashlight over Schmidt to assist the EMS workers, he noticed an odor of alcohol coming

from Schmidt. After Schmidt was placed in the ambulance for transport to the medical center, Garner followed the ambulance in order to obtain a blood sample as he suspected Schmidt had been driving while intoxicated.

Schmidt and Garner arrived at the hospital at approximately 9:11 p.m. Garner waited in the emergency room while Schmidt was treated for his injuries. After Schmidt was treated, Garner requested a blood sample. Prior to requesting the blood sample, Garner provided Schmidt with the implied consent advisories, both orally and in writing through the DC-70 form. Pursuant to K.S.A. 2012 Supp. 8-1001(k)(4), Garner informed Schmidt that failure to submit to blood-alcohol testing constituted a separate crime that carried criminal penalties. Schmidt acquiesced to the blood test.

A phlebotomist from Quest Diagnostics obtained a blood sample from Schmidt at 11:23 p.m., within 3 hours of the accident. Garner sent Schmidt's blood to the Kansas Bureau of Investigation where it was tested. The results of the blood test revealed that Schmidt's blood had an alcohol concentration of .20 grams of alcohol per 100 milliliters of blood, two and a half times the legal limit.

On July 2, 2013, the State charged Schmidt with alternative counts of DUI in violation of K.S.A. 2012 Supp. 8-1567(a)(2) and (a)(3). Because Schmidt had a previous DUI diversion in Ellis County from August 2009 in case number 09TR2510, the charge was a class A nonperson misdemeanor pursuant to K.S.A. 2012 Supp. 8-1567(b)(1)(B).

On September 24, 2013, Schmidt filed a motion to suppress contending that Garner lacked probable cause or reasonable grounds to request testing and that Schmidt's consent to the blood draw was not voluntary because of the coercive nature of the implied consent advisories. Schmidt asked the district court to suppress the results of the blood test because they were obtained in violation of his rights under the Fourth Amendment to the United States Constitution.

3

On November 5, 2013, Schmidt filed a memorandum in support of his motion to suppress the blood test results. In his memorandum, Schmidt abandoned his claim that Garner lacked probable cause to request a blood test and instead focused on his argument that his consent to the test was not voluntarily given. He claimed that the coercive nature of the Kansas implied consent advisories rendered any consent obtained thereunder involuntary. Schmidt claimed that because he did not consent to the test, it did not fall under any exception to the warrant requirement, so his Fourth Amendment rights were violated. The State filed a response to Schmidt's motion to suppress and pointed to various Kansas Supreme Court decisions holding that even coerced consent does not violate the constitution given the State's compelling interest in safety on public roads.

On February 10, 2014, the district court issued a memorandum decision denying Schmidt's motion to suppress. The district court ruled that Schmidt's consent to the blood draw was valid and his Fourth Amendment rights were not violated. Following the denial of Schmidt's motion, the parties agreed to proceed with a bench trial on stipulated facts. Based on stipulated facts consistent with the facts set forth herein, the district court found Schmidt guilty of DUI in violation of K.S.A. 2012 Supp. 8-1567(a)(2). The district court sentenced Schmidt to serve 1 year in the Ellis County Jail but granted him 12 months' probation after he served 5 days in jail. Schmidt timely appealed his conviction.

DOES A WARRANTLESS BLOOD DRAW AUTHORIZED BY THE KANSAS IMPLIED CONSENT LAW FALL UNDER THE CONSENT EXCEPTION TO THE WARRANT REQUIREMENT?

Schmidt initially filed a brief with this court and claimed that subjecting him to a blood test pursuant to the Kansas Implied Consent Law constituted an unreasonable warrantless search in violation of the Fourth Amendment. Specifically, Schmidt claimed that any consent given under the Kansas Implied Consent Law is not a "knowing, intelligent, and voluntary consent free of duress or coercion." Schmidt argued that because the United States Supreme Court held in *Missouri v. McNeely*, 569 U.S. __, 133

4

S. Ct. 1552, 185 L. Ed. 2d 696 (2013), that the Fourth Amendment requires some exception to the warrant requirement prior to conducting a warrantless blood test, and because there was no valid consent here, his blood test results were illegally obtained.

The State initially filed a brief with this court and argued that a driver's consent to a blood test after being warned of the adverse legal consequences following a refusal does not mean the consent was not freely and voluntarily given. The State contended that coerced, or even forced consent, does not render consent involuntary, especially in light of the State's compelling interest in maintaining safety on public roads. The State pointed out that under Kansas law there is no right to refuse a blood test. The State submitted that Schmidt's blood draw was a reasonable search under the consent exception to the warrant requirement and did not violate Schmidt's Fourth Amendment rights.

In reviewing a district court's decision on a motion to suppress, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. We have unlimited review of the district court's ultimate legal conclusion. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

After the parties submitted their initial briefs, the United States Supreme Court issued its decision in *Birchfield v. North Dakota*, 579 U.S. __, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). In *Birchfield*, the United States Supreme Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but not warrantless blood tests. 136 S. Ct. at 2184-85. The Court also determined that motorists may not be criminally punished for refusing to submit to a warrantless blood draw. 136 S. Ct. at 2185-86. Noting that it was not addressing the constitutionality of various state implied consent laws, the Court ultimately held:

5

"Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. . . .

"It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

". . . [W]e conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S. Ct. at 2185-86.

Also, after the parties submitted their initial briefs in this case but before the United States Supreme Court filed its decision in *Birchfield*, the Kansas Supreme Court issued decisions in *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016), and *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016). In *Ryce*, the court held that K.S.A. 2014 Supp. 8-1025, which imposes criminal penalties upon a motorist for refusing to submit to any method of blood-alcohol testing, is facially unconstitutional because the statute is not narrowly tailored to serve a compelling state interest. 303 Kan. at 963. In *Nece*, the court held that a driver's consent to a breath test premised on the threat of criminal prosecution for test refusal "was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing. Thus, because [the] consent was premised on the inaccurate information in the advisory, [the] consent was involuntary." 303 Kan. at 889.

Our Supreme Court has granted the State's motion for rehearing in both *Ryce* and *Nece*; neither decision is final. However, the rulings in *Ryce* and *Nece,* at least as they apply to warrantless blood tests in contrast to warrantless breath tests, are reinforced by the holding in *Birchfield* that motorists may not be criminally punished for refusing to submit to a warrantless blood draw and that consent to a warrantless blood test cannot be premised on a threat of criminal penalties for refusal to submit to the test.

6

Here, Schmidt submitted to a warrantless blood test and his case is controlled by *Birchfield*. The Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but not warrantless blood tests. *Birchfield*, 136 S. Ct. at 2184-85. Moreover, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S. Ct. at 2186. Based on *Birchfield*, the warrantless blood draw of Schmidt cannot be upheld based on either search incident to arrest or consent. Thus, we reject the State's claim that Schmidt's warrantless blood test authorized by the Kansas Implied Consent Law falls under the consent exception to the warrant requirement when Garner advised Schmidt that failure to submit to the test constituted a separate crime. Although Garner may have inadvertently done so, he violated Schmidt's constitutional rights by asking Schmidt to submit to a blood test and advising him that refusal to submit to the test constituted a separate crime.

CAN SCHMIDT'S BLOOD TEST RESULTS BE ADMITTED UNDER THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE?

After the United States Supreme Court decided *Birchfield*, this court issued a show cause order as to why Schmidt's case should not be summarily reversed and remanded for a new trial in light of the Court's holding about warrantless blood tests. In response, the State asserted that the results of Schmidt's blood test should be admissible under the good-faith exception to the exclusionary rule. After receiving the State's response to the show cause order, this court ordered the parties to file supplemental briefs on two issues: (1) Should the State be allowed to assert a good-faith exception to the exclusionary rule for the first time on appeal? (2) Does the good-faith exception to the exclusionary rule apply under the facts of this case, and, if so, can this court make that determination without remanding the case to the district court to hear additional evidence?

7

*Can a claim invoking the good-faith exception to the exclusionary rule be raised for the first time on appeal?*

The State explains that it did not raise the good-faith exception in the district court for the obvious reason that when the case was before the district court, Kansas caselaw clearly permitted warrantless blood draws pursuant to the Kansas Implied Consent Law. The State argues that it was not until "new case law . . . fundamentally altered the legal landscape regarding warrantless blood draws" that the State even needed to consider the applicability of the good-faith exception to the exclusionary rule. The State asserts that it should be permitted to invoke the good-faith exception to the exclusionary rule for the first time on appeal because the newly asserted theory involves only a question of law based on proved or admitted facts and is determinative of the case.

Schmidt urges this court not to consider the applicability of the good-faith exception for the first time on appeal. In support of his argument, he notes that our Supreme Court in *Nece* declined to consider the issue of the good-faith exception for the first time on appeal. See 303 Kan. at 897. However, the procedural facts in *Nece* were significantly different from the facts herein. In *Nece*, the State not only failed to file a supplemental brief presenting the good-faith argument to the Supreme Court, but at oral argument the attorney for the State conceded that the State was not seeking application of the exception. 303 Kan. at 897. Under these circumstances, our Supreme Court declined to consider the potential application of the good-faith exception, noting that an argument not briefed is deemed waived and abandoned. 303 Kan. at 897. Here, the State has asserted the application of the good-faith exception to the exclusionary rule and the parties have filed supplemental briefs addressing this issue.

Although generally a new legal theory cannot be raised for the first time on appeal, there are three recognized exceptions to this rule: (1) The newly asserted theory involves only questions of law based on proved or admitted facts and is determinative of

the case; (2) consideration of the theory is necessary to serve the ends of justice or prevent a denial of fundamental rights; and (3) the judgment of the trial court was correct but based on the wrong grounds or reasoning. *State v. Jones*, 302 Kan. 111, 117, 351 P.3d 1228 (2015). If a party seeks to raise a new issue on appeal, Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an explanation of why an issue not raised below should be considered for the first time on appeal.

There is no factual dispute here as the relevant facts were stipulated in district court. Based on the stipulated facts, Schmidt's consent to the blood test is deemed involuntary only because it was obtained as a result of the incorrect and coercive implied consent advisories that threatened criminal prosecution as a consequence of refusing to submit to the test. Schmidt is not claiming that his consent was otherwise involuntary. In ordering the parties to file supplemental briefs on whether the good-faith exception applied in this case, we directed the parties to address whether this court can make that determination without remanding the case to the district court to hear additional evidence. In his response, Schmidt has pointed to no disputed facts and he has made no argument as to why the case must be remanded to the district court to hear additional evidence.

We note that our Supreme Court considered the applicability of the good-faith exception to the exclusionary rule for the first time on appeal in *State v. Daniel*, 291 Kan. 490, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). In that case the defendant was convicted of possession of methadone, which was found during a warrantless search of her vehicle following her arrest for driving with a suspended license. The district court determined the search was lawful under K.S.A. 22-2501(c), which at the time authorized a vehicle search incident to an arrest for the purpose of discovering the fruits, instrumentalities, or evidence of *any crime*.

While the defendant in *Daniel* was appealing her conviction, K.S.A. 22-2501(c) was declared unconstitutional in *State v. Henning*, 289 Kan. 136, 148-49, 209 P.3d 711

9

(2009), which applied *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). *Daniel*, 291 Kan. at 491-92. Our Supreme Court in *Daniel* allowed the State to argue for the first time on appeal that the exclusionary rule does not apply to evidence obtained by police who acted in objectively reasonable reliance upon a statute that was subsequently declared unconstitutional. 291 Kan. at 492-93. The court ultimately held that the good-faith exception applied and upheld the vehicle search. 291 Kan. at 505.

Schmidt's case is procedurally similar to the situation presented in *Daniel*. Here, the State's good-faith argument involves only a question of law:  namely, whether the good-faith exception to the exclusionary rule should apply to warrantless blood tests as authorized by the Kansas Implied Consent Law prior to the holding in *Birchfield* that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense. The underlying facts were stipulated by the parties in district court, and Schmidt has offered no reason why this court cannot address the good-faith exception without remanding the case to the district court to hear additional evidence. Thus, we conclude that the State can invoke the good-faith exception to the exclusionary rule for the first time on appeal because the newly asserted theory involves only a question of law based on proved or admitted facts and is determinative of the case.

*Does the good-faith exception apply here?*

The State urges this court to apply the good-faith exception to the exclusionary rule here because at the time of the warrantless blood draw, Garner's actions were legal. Therefore, the State asserts that suppressing the results of Schmidt's blood-alcohol test would not serve the purpose of the exclusionary rule which is to deter police misconduct. The State points out that decisions casting doubt on the constitutionality of warrantless blood draws did not begin to come out until nearly 4 years after Schmidt's arrest. Thus, the State argues that "[e]xcluding the evidence obtained by [the officer] based on changes in the law that occurred nearly four years later 'cannot logically contribute to the

10

deterrence of Fourth Amendment violations.'" (Quoting *Illinois v. Krull*, 480 U.S. 340, 350, 107 S. Ct. 1160, 94 L. Ed. 3d 364 [1987].)

In response, Schmidt claims that applying the good-faith exception to the exclusionary rule here would have a "chilling effect" on an individual's constitutional rights. Specifically, he points to Justice Sandra Day O'Connor's admonitions in *Krull*, 480 U.S. at 366 (O'Connor, J., dissenting), that "'[p]roviding legislatures a grace period during which the police may freely perform unreasonable searches in order to convict those who might have otherwise escaped creates a positive incentive to promulgate unconstitutional laws.'" Schmidt argues that the exclusionary rule must be applied here in order to prevent the legislature from "curtail[ing], limit[ing], or even violat[ing] an individual's constitutional rights through the passage of some new, experimental legislation."

Whether the good-faith exception applies is a question of law over which an appellate court has unlimited review. See *State v. Carlton*, 297 Kan. 642, 645, 304 P.3d 323 (2013) ("The only remaining inquiry is whether the appropriate remedy is to suppress the evidence seized. This is a question of law."); *Daniel*, 291 Kan. at 496.

Warrantless searches are per se unreasonable, and thus unlawful, unless they fall within one of the established exceptions to the warrant requirement. *Daniel*, 291 Kan. at 496. There is no express constitutional prohibition against using illegally obtained evidence; however, the exclusionary rule, which is a judicially created remedy, prohibits "the use of unconstitutionally obtained evidence in a criminal proceeding against the victim of an illegal search." 291 Kan. at 496 (citing *Krull*, 480 U.S. at 347). The purpose of the exclusionary rule is to protect Fourth Amendment rights through deterrence, but it is not a personal constitutional right of a defendant. *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

11

The United States Supreme Court in *Krull* carved out an exception to the exclusionary rule when a law enforcement officer, in good faith, reasonably relies on an unconstitutional statute because suppression does not further the rule's deterrent intent:

> "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." 480 U.S. at 349-50.

Our Supreme Court recognized and applied the good-faith exception as articulated in *Krull* for the first time in *Daniel.* Noting that the good-faith exception is not unlimited, our Supreme Court echoed the United States Supreme Court's admonition in *Krull* that in order for the good-faith exception to apply, an officer's reliance on a statute must be objectively reasonable. *Daniel*, 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). A law enforcement officer cannot claim good-faith reliance on a statute if a reasonable officer should have known that the statute was unconstitutional. 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). Additionally, reliance on a statute is not objectively reasonable if the legislature "'wholly abandoned its responsibility to enact constitutional laws'" when passing the statute. 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

In *Birchfield*, the United States Supreme Court noted that it was not addressing the constitutionality of various state implied consent laws. 136 S. Ct. at 2185. Nevertheless, the *Birchfield* Court held that motorists cannot be criminally punished for refusing to submit to a warrantless blood draw and that motorists cannot be deemed to have consented to submit to a blood test on the pain of committing a criminal offense. 136 S. Ct. at 2185-86. In *Ryce*, 303 Kan. at 963, our Supreme Court held that K.S.A. 2014 Supp. 8-1025 was facially unconstitutional, and in *Nece*, 303 Kan. at 896-97, our Supreme Court ruled that the implied consent advisories in K.S.A. 2014 Supp. 8-1001 were impermissibly coercive. Although the decisions in *Ryce* and *Nece* are not final, the

12

United States Supreme Court's decision in *Birchfield* makes it clear that K.S.A. 2012 Supp. 8-1025 and the implied consent advisories in K.S.A. 2012 Supp. 8-1001(k)(4) are no longer enforceable at least as to blood tests. The issue here is whether Garner objectively and reasonably relied on these statutes when he provided Schmidt with the implied consent advisories and asked him to consent to a blood test.

At the time of Schmidt's arrest, Garner was required by K.S.A. 2012 Supp. 8-1001(k)(4) to inform Schmidt that he could face criminal penalties if he refused to submit to any method of blood-alcohol testing. Also, at the time of Schmidt's arrest, Kansas courts had consistently upheld the constitutionality of warrantless blood draws undertaken pursuant to K.S.A. 8-1001. See, *e.g.*, *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008); *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 835, 888 P.2d 832 (1995); *Popp v. Motor Vehicle Department*, 211 Kan. 763, 767, 508 P.2d 991 (1973).

Garner had no reason to know that the implied consent advisories would be found impermissibly coercive 4 years after Schmidt's arrest, and K.S.A. 2012 Supp. 8-1001(k)(4) was not so clearly unconstitutional at the time of Schmidt's arrest that a reasonably well-trained officer would have known that it was unconstitutional. By giving the advisories and informing Schmidt that he could be charged with a separate crime for refusing to submit to a blood test, Garner was merely fulfilling his responsibility to enforce the statute as written, and suppression would not serve the deterrent aim of the exclusionary rule.

Furthermore, there is no indication that in enacting either K.S.A. 2012 Supp. 8-1025 or K.S.A. 2012 Supp. 8-1001(k)(4), the Kansas Legislature wholly abandoned its responsibility to pass constitutional laws. Other states had statutes similar to K.S.A. 2012 Supp. 8-1025 and continued to uphold them until the United States Supreme Court ruled in *Birchfield* that these types of criminal penalty laws are unenforceable as to blood tests.

13

See, *e.g.*, *Wing v. State*, 268 P.3d 1105, 1109-10 (Alaska App. 2012) (upholding the constitutionality of an Alaska statute criminalizing the refusal to submit to blood-alcohol test); *State v. Bernard*, 859 N.W.2d 762, 774 (Minn. 2015) (Minnesota statute that criminalizes refusal to submit to blood-alcohol test passes rational basis review).

Schmidt argues that applying the good-faith exception here would have a chilling effect because it will encourage the legislature to pass unconstitutional laws. But as discussed above, the good-faith exception is not absolute and reliance on a statute must be reasonable; reliance is not reasonable if the legislature wholly abandoned its duty to enact constitutional laws. *Krull*, 480 U.S. at 355. As the court concluded in *Daniel*, the possibility of the legislature hiding behind the good-faith exception to enact blatantly unconstitutional laws is unlikely to occur because "the safeguards required by *Krull* for a court to examine whether law enforcement reliance on a particular statute was objective and reasonable under the circumstances militate against the possibility for legislative mischief that might seek to take unfair advantage of this exception." 291 Kan. at 500.

Finally, Schmidt points to *State v. Pettay*, 299 Kan. 763, 326 P.3d 1039 (2014), as an example of a case where the Kansas Supreme Court declined to apply the good-faith exception to the exclusionary rule in order to uphold a vehicle search incident to the defendant's arrest pursuant to K.S.A. 22-2501, after the statute was subsequently held to be unconstitutional. But *Pettay* is distinguishable because the law enforcement officer in that case searched the vehicle after the driver had been handcuffed and placed in the backseat of a patrol car. The court pointed out that K.S.A. 22-2501, upon which the officer relied to conduct the search, had always required that a search incident to an arrest must be limited to the area within the arrestee's immediate presence. 299 Kan. at 770. Because the law enforcement officer failed to comply with the plain language of the statute and exceeded the permissible scope of the search set forth in K.S.A. 22-2501, the court determined that the good-faith exception to the exclusionary rule should not be applied to uphold the search. 299 Kan. at 771-72.

14

In sum, the good-faith exception is applicable here. There is nothing to suggest that at the time of Schmidt's arrest, Garner should have known that the criminal penalty statute was unconstitutional and that the Kansas implied consent advisories were coercive, nor is there any indication that the legislature wholly abandoned its duty to enact constitutional laws in passing either statute. When Garner advised Schmidt that failure to submit to the blood test constituted a separate crime, Garner was only doing what he was required by law to do. Suppressing Schmidt's blood test results would not serve the purpose of the exclusionary rule, which is to deter police misconduct. Thus, while the district court based its decision to deny Schmidt's motion to suppress his blood test results on the wrong ground, we uphold the district court's decision as being correct for the wrong reason. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (district court's decision will be upheld even though it relied upon the wrong ground).

Affirmed.