NOT DESIGNATED FOR PUBLICATION

No. 114,413

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF KINGMAN,
*Appellee*,

v.

RONALD S. ARY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Kingman District Court; LARRY T. SOLOMON, judge. Opinion filed December 15, 2017. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Cody R. Smith*, assistant city attorney, for appellee.

Before HILL, P.J., MALONE, J., and MERLIN G. WHEELER, District Judge, assigned.

PER CURIAM: Ronald S. Ary appeals his conviction of driving under the influence (DUI). Ary claims the arresting officer violated his Fourth Amendment rights by subjecting him to a warrantless blood test pursuant to the Kansas Implied Consent Law. We agree. However, we also agree with the City of Kingman's argument that the results of Ary's blood test are admissible in this instance under the good-faith exception to the exclusionary rule. Accordingly, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

The parties stipulated to the facts in this case. On May 10, 2014, Officer Danny McDorman of the Kingman Police Department was dispatched to a motor vehicle accident involving Ary that occurred on East B Avenue in Kingman, Kansas. After arriving at the scene, McDorman noticed that the odor of alcohol was emanating from the cab of Ary's truck. McDorman also observed many signs that he believed indicated that Ary had consumed alcohol, including Ary smelling of alcohol, smoking cigarettes, chewing mints, and having difficulty with physical coordination. In light of his observations, McDorman proceeded with a DUI investigation. After completing the investigation, McDorman arrested Ary for DUI.

After the arrest, McDorman transported Ary to the Kingman County law enforcement center. McDorman provided Ary with his implied consent advisories, both orally and in writing through the use of a DC-70 form. The DC-70 form included a notice that Ary could be charged with a separate crime for refusing to submit to blood-alcohol testing. After receiving his implied consent advisories, Ary agreed to submit to a blood test. An authorized medical technician arrived at the law enforcement center and drew a sample of Ary's blood. The sample was tested and the results indicated an alcohol level of 0.14 grams per 100 milliliters of blood.

The City of Kingman (the City) charged Ary with one count of DUI, second offense, a class A misdemeanor. After being convicted in municipal court, Ary appealed to district court and filed a motion to suppress the evidence. In his motion, Ary argued that McDorman violated his Fourth Amendment rights when he ordered the blood draw without first obtaining a search warrant. He also argued that any consent he gave to the blood draw was a result of coercion, so his consent could not be considered as an exception to the warrant requirement. The City filed a response to the motion and argued that Ary's consent to the blood draw was voluntary, which constituted an exception to the

2

warrant requirement. In the alternative, the City argued that even if the search was unconstitutional, it would fall within the good-faith exception to the exclusionary rule. The district court ultimately denied the motion to suppress, finding that Ary's consent to the blood test was not a result of coercion. The district court did not reach the City's argument as to the application of the good-faith exception to the exclusionary rule.

The parties proceeded to a bench trial on stipulated facts. As part of the stipulated facts, the parties agreed that McDorman had probable cause to arrest Ary for DUI and that he proceeded with the blood draw under the authority granted to him under the Kansas Implied Consent Law. Based on the stipulated facts, the district court found Ary guilty of DUI. Ary timely appealed his conviction.

ANALYSIS

On appeal, Ary claims the district court erred in denying his motion to suppress the evidence. Ary argues that McDorman violated his Fourth Amendment rights by subjecting him to a warrantless search pursuant to the Kansas Implied Consent Law. Ary also argues that his consent to the blood draw was coerced by the threat of criminal prosecution if he refused to take the test. He contends that because the United States Supreme Court held in *Missouri v. McNeely*, 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), that the Fourth Amendment requires some exception to the warrant requirement prior to conducting a warrantless blood test, and because there was no valid consent here, his blood test results were illegally obtained.

The City argues that McDorman did not violate Ary's Fourth Amendment rights by complying with the provisions of the Kansas Implied Consent Law. In the alternative, the City reasserts its argument that even if the search was unconstitutional, the results of Ary's blood test should be admissible under the good-faith exception to the exclusionary rule. Ary filed no reply brief and he has not responded to the City's good-faith argument.

3

In reviewing a district court's decision on a motion to suppress, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. We have unlimited review of the district court's ultimate legal conclusion. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

After the parties submitted their briefs in this case, the United States Supreme Court issued its decision in *Birchfield v. North Dakota*, 579 U.S. ___,136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). In *Birchfield*, the United States Supreme Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but not warrantless blood tests. 136 S. Ct. at 2184-85. The Court also determined that motorists may not be criminally punished for refusing to submit to a warrantless blood draw. 136 S. Ct. at 2185-86. Noting that it was not addressing the constitutionality of various state implied consent laws, the Court ultimately held:

> "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. . . .
> "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.
> "[W]e conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S. Ct. at 2185-86.

Also, in *State v. Ryce*, 303 Kan. 899, 963, 368 P.3d 342 (2016) (*Ryce I*), the Kansas Supreme Court held that K.S.A. 2014 Supp. 8-1025, which imposes criminal penalties upon a motorist for refusing to submit to any method of blood-alcohol testing, is

4

facially unconstitutional because the statute criminalizes a defendant's right to withdraw his or her consent to a warrantless search and the statute is not narrowly tailored to serve a compelling state interest. In *State v. Nece*, 303 Kan. 888, 889, 367 P.3d 1260 (2016) (*Nece I*), our Supreme Court held that a driver's consent to a breath test premised on the threat of criminal prosecution for test refusal "was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing. Thus, because [the] consent was premised on the inaccurate information in the advisory, [the] consent was involuntary." Our Supreme Court granted the State's motion for rehearing in both *Ryce I* and *Nece I*. However, our Supreme Court essentially reaffirmed its holding in each case. See *State v. Ryce*, 306 Kan. 682, 699-700, 396 P.3d 711 (2017) (*Ryce II*); *State v. Nece*, 306 Kan. 679, 681, 396 P.3d 709 (2017) (*Nece II*).

Here, Ary submitted to a warrantless blood test and his case is controlled by *Birchfield*, *Ryce II*, and *Nece II*. Based on those decisions, the warrantless blood draw of Ary cannot be upheld based either on consent or as a search incident to a lawful arrest. Thus, we reject the City's claim that Ary's warrantless blood test authorized by the Kansas Implied Consent Law falls under the consent exception to the warrant requirement when McDorman advised Ary that failure to submit to the test constituted a separate crime. Although McDorman may have inadvertently done so, he violated Ary's constitutional rights by asking Ary to submit to a blood test and advising him that refusal to submit to the test constituted a separate crime.

*The good-faith exception*

We now turn to the City's alternative argument that even if the search was unconstitutional, the results of Ary's blood test should be admissible under the good-faith exception to the exclusionary rule. The City asserted this argument in district court, so the claim is not being raised for the first time on appeal. The district court did not reach the

5

good-faith exception for the obvious reason that it found that Ary's consent to the blood test was not a result of coercion. On appeal, the City has reasserted its good-faith argument. Ary could have responded to this argument by filing a timely reply brief, but he did not do so. We also note that Ary's motion to suppress and bench trial were submitted to the district court based on stipulated facts. The parties stipulated in district court that McDorman had probable cause to arrest Ary for DUI and that Ary requested the blood test "under the authority granted him under the Kansas Implied Consent Law."

Based on the record before us, we conclude that we may now address the City's claim under the good-faith exception to the exclusionary rule. See *State v. Schmidt*, 53 Kan. App. 2d 225, 233, 385 P.3d 936 (2016) (good-faith argument addressed by this court where facts were stipulated in district court). Whether the good-faith exception applies to a given set of facts is a question of law over which an appellate court has unlimited review. See *State v. Carlton*, 297 Kan. 642, 645, 304 P.3d 323 (2013).

The purpose of the exclusionary rule is to protect Fourth Amendment rights through deterrence, but it is not a personal constitutional right of a defendant. *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In *Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987), the United States Supreme Court carved out an exception to the exclusionary rule when a law enforcement officer, in good faith, reasonably relies on an unconstitutional statute because suppression does not further the rule's deterrent intent:

> "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." 480 U.S. at 349-50.

Our Supreme Court recognized and applied the good-faith exception as articulated in *Krull* for the first time in *State v. Daniel*, 291 Kan. 490, 242 P.3d 1186 (2010). Noting that the good-faith exception is not unlimited, our Supreme Court echoed the United States Supreme Court's admonition in *Krull* that in order for the good-faith exception to apply, an officer's reliance on a statute must be objectively reasonable. *Daniel*, 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). A law enforcement officer cannot claim good-faith reliance on a statute if a reasonable officer should have known that the statute was unconstitutional. 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). Additionally, reliance on a statute is not objectively reasonable if the legislature "'wholly abandoned its responsibility to enact constitutional laws'" when passing the statute. 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

Returning to our facts, at the time of Ary's arrest, McDorman was required by K.S.A. 2013 Supp. 8-1001(k)(4) to inform Ary that he could face criminal penalties if he refused to submit to any method of blood-alcohol testing. Also, at the time of Ary's arrest, Kansas courts had consistently upheld the constitutionality of warrantless blood draws undertaken pursuant to K.S.A. 8-1001. See, e.g., *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 176 P.3d 938 (2008); *Furthmeyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 888 P.2d 832 (1995); *Popp v. Motor Vehicle Department*, 211 Kan. 763, 508 P.2d 991 (1973).

McDorman had no reason to know that the Kansas Supreme Court would find that the implied consent advisories were impermissibly coercive two years after Ary's arrest, and K.S.A. 2013 Supp. 8-1001(k)(4) was not so clearly unconstitutional at the time of Ary's arrest that a reasonably well-trained officer would have known that it was unconstitutional. By giving the advisories and informing Ary that he could be charged with a separate crime for refusing to submit to a blood test, McDorman was merely fulfilling his responsibility to enforce the statute as written, and suppression of the evidence would not serve the deterrent aim of the exclusionary rule.

7

Furthermore, there is no indication that in enacting either K.S.A. 2013 Supp. 8-1025 or K.S.A. 2013 Supp. 8-1001(k)(4), the Kansas Legislature wholly abandoned its responsibility to pass constitutional laws. Other states had statutes similar to K.S.A. 2013 Supp. 8-1025 and continued to uphold them until the United States Supreme Court ruled in *Birchfield* that these types of criminal penalty laws are unenforceable as to blood tests. See, e.g.*, Wing v. State*, 268 P.3d 1105, 1109-10 (Alaska App. 2012) (upholding the constitutionality of an Alaska statute criminalizing the refusal to submit to blood-alcohol test); *State v. Bernard*, 859 N.W.2d 762, 774 (Minn. 2015) (Minnesota statute that criminalizes refusal to submit to blood-alcohol test passes rational basis review).

In sum, the good-faith exception to the exclusionary rule is applicable here. When McDorman advised Ary that failure to submit to the blood test could be a separate crime, he was only doing what he was required by law to do. Suppressing Ary's blood test results would not serve the purpose of the exclusionary rule, which is to deter police misconduct. Thus, while the district court based its decision to deny Ary's motion to suppress his blood test results on the wrong ground, we uphold the district court's decision as being correct for the wrong reason. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (district court's decision will be upheld even though it relied upon the wrong ground).

Affirmed.