NOT DESIGNATED FOR PUBLICATION

No. 115,980

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRENTON MICHAEL HEIM,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed April 20, 2018. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.


PER CURIAM: Trenton Heim was arrested for driving under the influence of alcohol (DUI) in 2015. A deputy later read Heim the statutorily required implied consent advisories from a DC-70 form. Heim refused to take a breath alcohol test but asked to take a blood alcohol test, and a sample was taken as prescribed by statute. With the underlying facts stipulated by the parties, the district court denied Heim's motion to suppress, which alleged a Fourth Amendment violation based on a warrantless search to which he did not voluntarily consent. Once again considering the stipulated facts, the district court then convicted Heim of DUI and Heim timely appeals. We find the good-

1

faith exception applies to the deputy's warrantless collection of evidence and affirm the district court's decision.

FACTS AND PROCEDURAL BACKGROUND

The parties presented a stipulation of facts to the district court, agreeing to the following as the basis for that court's resolution of their questions of law. Just before 3 a.m. on April 26, 2015, Reno County Sheriff's Deputy Jack Trussell responded to the intersection of 43rd Street and Lorraine in Reno County, the scene of a two-vehicle collision. The reporting party, Ryan Willis, had been helping a friend with a blown tire when another car came from behind and hit Willis' vehicle. The driver who hit Willis' car was later identified as Trenton Heim.

On arrival, Trussell asked to see Heim's driver's license. While talking to Heim, Trussell noticed he had bloodshot eyes and slurred speech, and Trussell smelled an odor of alcoholic beverage on Heim's breath. Based on his training and experience, Trussell suspected Heim was under the influence of alcohol and he asked Heim to perform Standardized Field Sobriety Tests (SFSTs). Before Heim undertook the SFSTs, he told Trussell he had consumed "a few" alcoholic beverages, beer, two to three hours prior to the accident. In Trussell's opinion, Heim failed to execute the SFSTs successfully, and the parties stipulated Trussell had sufficient evidence of impairment to arrest Heim for DUI. Heim refused Trussell's request that he submit to a preliminary breath test. Trussell arrested Heim and transported him to the Reno County Detention Center.

At the detention center, Trussell read Heim the implied consent advisories from the DC-70 form and gave him a copy as required by statute. Heim again refused a request to provide a breath sample but asked if he could provide a blood sample. Without first obtaining a search warrant, Trussell had Heim submit a blood sample, which was collected in accordance with statute and was then handled in a manner that preserved its

2

integrity for evidentiary use. The sample was later tested by a qualified forensic chemist at the Kansas Bureau of Investigation. Analysis of the blood sample showed .19 grams alcohol per 100 milliliters of blood, sufficient to support conviction for DUI.

Heim elected to have the district judge consider the stipulated facts in a bench trial and made the necessary waiver of his right to a jury trial. Prior to trial, Heim filed a motion to suppress the blood test results, arguing the implied consent statute was unconstitutional on its face, the search was conducted without a warrant, and he did not give knowing, intelligent, and voluntary consent free of duress or coercion.

The district court declined to suppress the blood test and found Heim guilty of DUI. Heim timely appeals.

## ANALYSIS

Heim asserts six issues on this appeal. Having considered each, we find two are germane to our decision: (1) whether the State may now raise an argument for applicability of the good-faith exception to the search warrant requirement; and (2) whether the good-faith exception should be applied to these facts.

*Standard of review*

Heim's appeal focuses on the district court's denial of his motion to suppress the blood test that was a principal basis for his conviction.

> "An appellate court reviews the district court's decision on a motion to suppress evidence using a bifurcated standard. Without reweighing the evidence, the appellate court reviews the district court's findings to determine whether they are supported by substantial competent evidence. The appellate court then reviews the ultimate legal conclusion regarding the suppression of evidence using a de novo standard. *State v.*

3

*Rupnick*, 280 Kan. 720, 727, 125 P.3d 541 (2005)." *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

*Asserting application of the good-faith exception for the first time on appeal*

Heim argues application of the good-faith exception may not be raised for the first time on appeal, citing *State v. Nece*, 303 Kan. 888, 897, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*). The *Nece* court declined to hear the issue because "the State did not file a supplemental brief presenting the argument to us and at oral argument the attorney for the State conceded that the State was not seeking application of the exception." *Nece I*, 303 Kan. at 897. The State argues this exception may be raised for the first time on appeal because at the time of Heim's arrest, prior to *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560 (2016), the State could constitutionally conduct blood tests for DUI charges, so until now there was no reason to raise the good-faith exception.

Although a new legal theory generally may not be raised for the first time on appeal, there are three exceptions:

> "(1) The newly asserted theory involves only questions of law based on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or prevent a denial of fundamental rights; and (3) the judgment of the trial court was correct but based on the wrong grounds or reasoning." *State v. Schmidt*, 53 Kan. App. 2d 225, 231-32, 385 P.3d 936 (2016), *rev. denied* 306 Kan. 1329 (2017).

The posture of the arguments was different in *Nece*; here the State has raised the good-faith exception issue in its brief and argues for its application. The State may raise this issue at this point because after *Birchfield* the good-faith exception became a newly relevant theory that involves only a question of law, based on stipulated facts, and it is determinative of the case.

4

*Application of the good-faith exception to the facts of this case*

Both the State and Heim identified multiple issues in their briefs. As we explain below, however, having determined the good-faith exception is properly before us, the core question is whether or not it should be applied to these facts. Various parts of the parties' analysis, which they broke off into separate issues, will be addressed as applicable to our consideration of that core question.

The State's argument is two-tiered: (1) Heim was offered a breath test and refused, but asked to give a blood sample instead, making it a voluntary consent to a warrantless search; and (2) if we find *Birchfield* controls, precluding voluntary consent to a blood test because of the unconstitutional advisory read to Heim, the good-faith exception applies.

The first part of that argument fails because of *Nece*. Consent is not voluntary if it is "obtained by means of an inaccurate and coercive advisement." *Nece II*, 306 Kan. at 681. Although Heim asked to submit to the blood test, his request came in the wake of the inaccurate and coercive implied consent advisories that explained he could submit to a test or be found to have committed a crime. Heim's consent was not voluntary.

In the "if not that, then this" part of the argument, the State contends the good-faith exception should apply because Trussell's reliance on the implied consent law as it then existed was objectively reasonable since he had no basis to conclude on his own that it was unconstitutional. Because of what it sees as reasonable reliance, the State also asserts suppressing the blood test would not fulfill the exclusionary rule's purpose of deterring future unlawful conduct. Finally, the State argues the Legislature's enactment of that implied consent law and criminal penalties for refusal was not an abandonment of its responsibility to enact constitutional laws since other states had similar laws in place. And contrary to being an abandonment of its duty, the State contends the Legislature

5

acted in furtherance of the state's compelling interest in promoting safety on the public roads.

Opposing application of the good-faith exception, Heim argues it is wrong to focus generally on reliance by an officer on the unconstitutional implied consent law and the criminal penalties for refusal. Instead, he claims the issue is "simply . . . a warrantless search which is presumed to be unreasonable and the State cannot prove voluntary consent free of duress or coercion." Heim also argues the Supreme Court had the opportunity to apply the good-faith exception in *Nece* but declined to do so and asserts this was a case when the Legislature abandoned its responsibility to enact constitutional laws.

Usually, evidence that is unconstitutionally obtained by an illegal search and seizure is excluded at trial. *Mapp v. Ohio*, 367 U.S. 643, 654-55, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). However, an exception may apply when an officer reasonably relied on a statute that was later held unconstitutional. "In order to determine whether an officer reasonably relied on a statute, courts consider whether the legislature 'wholly abandoned its responsibility to enact constitutional laws' and whether the statute was so clearly unconstitutional that a reasonable officer should have known that it was unconstitutional." *State v. Kraemer*, 52 Kan. App. 2d 686, 698, 371 P.3d 954 (2016) (quoting *Illinois v. Krull*, 480 U.S. 340, 355, 107 S. Ct. 1160, 94 L. Ed. 2d 364 [1987]), *rev. denied* 306 Kan. 1325 (2017).

The United States Supreme Court has explained the exclusionary rule is purpose driven, rather than an abstract principle:

> "As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced. Thus, in various circumstances, the Court has examined whether the rule's deterrent

6

effect will be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process." *Krull*, 480 U.S. at 347.

The deterrent purpose of the rule underlies the rationale for the good-faith exception.

> "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written. To paraphrase the Court's comment in *Leon:* 'Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.'" *Krull*, 480 U.S. at 349-50 (quoting *United States v. Leon*, 468 U.S. 897, 921, 104 S. Ct. 3405, 82 L. Ed. 2d 677 [1984]).

This court has applied the good-faith exception to the implied consent laws. In *Schmidt*, the court applied the exception after an officer gave a DUI suspect the implied consent advisories, including the prospect of prosecution for refusal. That court reasoned that Kansas law at the time required the officer to give the advisory to the suspect and our courts had previously upheld warrantless blood draws taken under the implied consent law. Therefore, a well-trained officer would have no reason to know the statute would later be held unconstitutional. The officer was "merely fulfilling his responsibility to enforce the statute as written, and suppression would not serve the deterrent aim of the exclusionary rule." *Schmidt*, 53 Kan. App. 2d at 236. Two unpublished opinions have adopted similar holdings: *State v. Soukup*, No. 116,913, 2017 WL 2403310, at *2-3 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (December 22, 2017), and *State v. Steckline*, No. 112,242, 2017 WL 383343, at *7-8 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. 1330 (2017).

Trussell gave Heim the implied consent advisories as he was statutorily required to do. At that time, Trussell had no basis to foresee the statute later would be held unconstitutional. Kansas courts had previously upheld blood draws taken after notification in accordance with K.S.A. 2015 Supp. 8-1001(k) and other states had upheld similar criminal refusal laws. Therefore, Trussell's reliance on the statute was objectively reasonable and excluding this evidence would have no deterrent effect on future police misconduct.

Heim's argument that the relevant issue is merely that "the State cannot prove voluntary consent free of duress or coercion" ignores that fact that the coercion arose from the criminal refusal statute upon which Trussell reasonably relied. The two cannot be so conveniently disjoined. The good-faith exception applies to the facts of this case and the suppression was properly denied.

Affirmed.