No. 112,449

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DUSTIN DEAN PERKINS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Tests by the police for alcohol content of blood and breath are searches under the Fourth Amendment to the United States Constitution.

2.

Drivers who have consented to a blood-alcohol content test based on the threat that they may be charged with a criminal offense if they refused to take the test have not validly consented.

3.

Any warrantless search is intrinsically unreasonable unless it falls within one of the recognized exceptions to the search warrant requirement, which include: probable cause plus exigent circumstances; consent to be searched; and a search incident to arrest.

4.

Ordinarily, issues not raised before the trial court cannot be raised for the first time on appeal. An exception to this rule is when the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case.

5.

The search-incident-to-arrest exception to the search warrant requirement is a categorical exception to the warrant requirement and permits an officer to demand a breath test from a person arrested for a driving under the influence violation. Thus, a breath test—but not a blood test because it is more intrusive—may be administered as a search incident to lawful arrest for drunk driving.

6.

A good-faith exception to the exclusionary rule applies when an officer acts in an objectively reasonable reliance on a statute that is later determined to be unconstitutional.

Appeal from Ellis District Court; EDWARD E. BOUKER, judge. Opinion filed March 2, 2018. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Curtis Brown*, special prosecutor, of Hays, *Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., McANANY and ATCHESON, JJ.

HILL, J.: From time to time, the law changes while cases are awaiting appellate review. This is such a case. Dustin Dean Perkins appeals his conviction for driving under the influence of alcohol arising from a trial to the court on stipulated facts. The issue for

us to consider is whether his breath test was constitutional and its results admissible under the search-incident-to-arrest exception to the search warrant requirement of the Fourth Amendment to the United States Constitution. Following binding United States Supreme Court precedent, we hold that the breath test was a permissible search incident to arrest and thus, its results were admissible. Additionally, we hold the results were also admissible under the good-faith exception to the exclusionary rule. Accordingly, we affirm Perkins' conviction.

We begin with a brief summary of the facts that led to Perkins' conviction and follow with a review of three important appellate opinions that control our decision. We conclude with our analysis and explanation on why we affirm his conviction.

*A police officer witnessed a traffic infraction.*

Around 1:30 one morning in July 2012, an investigator from the Hays Police Department saw Perkins disobey a red traffic signal at an intersection. When the investigator stopped Perkins' car, he noticed that Perkins had bloodshot eyes and he detected a moderate odor of alcohol coming from Perkins' person. Perkins told him that he drank three beers that evening. When the investigator asked Perkins to get out of the car to perform field sobriety tests, he spotted an open, partially crushed, beer can on the floorboard between the driver's seat and door.

The field tests were informative. In the investigator's view, Perkins exhibited at least four "clues of impairment" on the walk-and-turn test. Perkins could not maintain his balance during the instructional phase of the test; he stopped walking before completing the second set of nine steps; he missed making heel-to-toe contact on both sets of nine steps; and, he did not turn around properly. On the one-legged-stand test, Perkins exhibited two clues of impairment—he swayed and hopped during all three 10-second standing periods.

3

All of these facts led the investigator to arrest Perkins for driving under the influence of alcohol. He then transported him to the law enforcement center for testing. He gave Perkins the oral and written notices required by the Kansas implied-consent law and, in due course, Perkins agreed to submit to a breath test. Perkins' breath test result indicated a breath-alcohol concentration of .158 grams of alcohol per 210 liters of breath, which is above the legal limit. The State charged him with a class A nonperson misdemeanor, driving under the influence of alcohol in violation of K.S.A. 2012 Supp. 8-1567(a)(2), or in the alternative (a)(3), and (b)(1)(B).

Before trial, Perkins moved to suppress the breath test results, contending that his consent for the test was coerced and involuntary. He argued that the breath test was an unreasonable search in violation of the Fourth Amendment to the United States Constitution. The district court denied his motion to suppress and found Perkins guilty on stipulated facts. Perkins appealed to this court.

*While this appeal was pending, two Supreme Courts made important rulings.*

Under Kansas law at the time of Perkins' arrest, a driver's consent to the testing of his or her blood, breath, urine, or other bodily substances for possible alcohol content was implied by statute. According to K.S.A. 2016 Supp. 8-1001, if a person is operating or attempting to operate a vehicle in Kansas, the law deems that person has consented to alcohol testing. Consent for testing is implied from that conduct. But, along with that law, K.S.A. 2016 Supp. 8-1025 made it a crime for a person to withdraw that implied consent by refusing the test. Our Kansas Supreme Court's treatment of the second statute— making it a crime to refuse the breath test—leads directly to the issue arising in this case. We now examine two cases from the Kansas Supreme Court and one from the United States Supreme Court.

4

While Perkins' appeal was pending, the Kansas Supreme Court struck down one of Kansas alcohol testing laws. The court held that K.S.A. 2014 Supp. 8-1025 was facially unconstitutional because by punishing an individual for withdrawing his or her consent to search, it violated the fundamental right to be free from an unreasonable search. It further held that the statute was not narrowly tailored to serve the State's interests. *State v. Ryce*, 303 Kan. 899, Syl. ¶¶ 9, 12, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*). The court did not stop there.

On the same day in another case, the court affirmed the suppression of a defendant's breath-alcohol test result in a case factually similar to this one. The court decided that the test resulted from involuntary consent because the defendant was told before consenting to the test that she might be charged with a separate crime for refusing to submit to a breath-alcohol test. In the court's view, since the State could not have constitutionally imposed criminal penalties if the defendant refused the test, the defendant's consent to submit to the test was obtained by means of an inaccurate and, therefore, coercive advisement. In other words, consent obtained through a falsehood is coercive and is no consent at all. *State v. Nece*, 303 Kan. 888, 889, 897, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*). The Kansas Supreme Court was not the only appellate court to address this subject.

Shortly after these two Kansas rulings, the United States Supreme Court went deeper into the subject. It held that courts cannot deem drivers to have validly consented to a blood-alcohol content test based on the threat that they may be charged with a criminal offense if they refused to take the test. This is consistent with the Kansas Supreme Court's rulings in *Ryce I and II*. Importantly, the Court went further than the Kansas court and held that warrantless *breath* tests are permitted as a search incident to arrest—another exception to the requirement for a search warrant. *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2185-86, 195 L. Ed. 2d 560 (2016).

5

The language in *Birchfield* could not be clearer. Breath tests are constitutionally acceptable warrantless searches incident to arrest:

> "Here, by contrast, we are concerned with the search-incident-to-arrest exception, and as we made clear in *Robinson* and repeated in *McNeely* itself, this authority is categorical. It does not depend on an evaluation of the threat to officer safety or the threat of evidence loss in a particular case.
>
> "Having assessed the effect of BAC tests on privacy interests and the need for such tests, we conclude that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving. The impact of breath tests on privacy is slight, and the need for BAC testing is great." *Birchfield*, 136 S. Ct. at 2183-84.

See *Missouri v. McNeely*, 569 U.S. 141, 150 n.3, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013); *United States v. Robinson*, 414 U.S. 218, 224, 234-35, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973).

After the ruling in *Birchfield*, the Kansas Supreme Court then reheard and reaffirmed its rulings in both *Ryce I* and *Nece I*. The court did modify its *Ryce I* decision "to reflect the validity of conducting a *breath* test in a DUI case where an arrest is made under the warrant exception of a search incident to lawful arrest," but the court reaffirmed its original holding that K.S.A. 2016 Supp. 8-1025 was unconstitutional based on its interpretation of the Kansas statute. *Ryce II*, 306 Kan. at 693, 698-99. In *Nece II*, the court reaffirmed that Nece's consent to the warrantless breath test was involuntary. But the court did not further consider or analyze whether the search was lawful under the search-incident-to-arrest exception to the warrant requirement. 306 Kan. at 680-81.

In the wake of these rulings, which were made while this appeal was pending, we wanted to know what effect, if any, they had on this case. So, we ordered the parties to submit supplemental briefs addressing the rulings in *Nece I* and *II*. Do any exceptions to the warrant requirement of the Fourth Amendment apply here? Both sides responded.

6

The State takes two positions, claiming victory if it prevails under either theory. It now argues that the results of the warrantless breath test in this case were constitutionally admissible since they were a result of a search incident to arrest. In the alternative, the exclusionary rule that excludes the admission of illegally obtained evidence should not apply here because the officer acted in good-faith reliance on the Kansas statute when advising Perkins that he might be charged with a separate crime for refusing the breath test. For his part, Perkins did not respond to the State's argument that the breath test was a lawful search incident to arrest. Instead, Perkins argues that the State cannot raise the good-faith exception for the first time on appeal and that the good-faith exception does not apply under these circumstances anyway.

*We review some fundamental points of law.*

The Fourth Amendment to the United States Constitution is the bedrock law we rely upon. It prohibits unreasonable searches. Blood and breath tests conducted by the police constitute searches. See *Birchfield*, 136 S. Ct. at 2173; *Ryce II*, 306 Kan. at 684. In addition, §15 of the Kansas Constitution Bill of Rights provides the same protections against unreasonable searches as the United States Constitution. *State v. Henning*, 289 Kan. 136, 145, 209 P.3d 711 (2009).

Any warrantless search is intrinsically unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Three possible exceptions arise in this context:

- probable cause plus exigent circumstances;
- consent to be searched; and
- a search incident to arrest.

We look at the three in that order.

7

The exigent-circumstances exception to the warrant requirement permits a warrantless search when police have insufficient time to obtain a warrant due to an emergency—in other words, exigent circumstances. For example, the exception permits police to enter private property without a warrant to provide urgent aid to those inside, or when police are in hot pursuit of a fleeing suspect, and to prevent the imminent destruction of evidence. Exigent circumstances must be considered on a case-by-case basis. The natural dissipation of alcohol from the bloodstream may *present* an exigency, but does not always *constitute* an exigency. *Birchfield*, 136 S. Ct. at 2173-74. The State does not argue that this exception applies and we will not consider it. We turn now to consent.

Clearly, under the rulings in *Birchfield* and *Nece I and II*, the consent exception to the normally required search warrant is inapplicable here where Perkins was informed that he may be charged with a separate crime for refusing a blood- or breath-alcohol test. Under the law as set out in those three cases, we must conclude that Perkins' consent was coerced because he was told that it was a crime to refuse the test. Therefore, the State cannot rely upon Perkins' consent to the test in order to admit the test results into evidence against him. We look to the final exception—the search incident to arrest.

The State did not argue in the trial court that this exception applied. Ordinarily, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But there are several exceptions to this rule:

- The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case;
- consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and
- the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

8

The first exception on that list is pertinent. Since this is a question of law on stipulated facts and is finally determinative of the case, we may consider the applicability of the search-incident-to-arrest exception for the first time on appeal. See *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016). Because of this consideration, we asked the parties to submit supplemental briefs addressing whether any exceptions to the warrant requirement of the Fourth Amendment should be applied.

We note that in *Nece II*, our Kansas Supreme Court did not address whether Nece's breath test was permissible as a search incident to arrest. This may have been because in its order granting the State's motion for rehearing of *Nece I*, the court limited the issues on rehearing to (1) whether the implied consent advisory accurately described possible legal consequences for breath test refusal in light of *Birchfield*; and (2) whether Nece's consent to the breath test was voluntary. For whatever reason, the court did not take up the issue of applying *Birchfield*'s search-incident-to-arrest exception to Nece's breath test. Since the opinion is silent on the issue, *Nece II* does not prevent this court from considering the issue now.

Basically, the search-incident-to-arrest exception permits the police to conduct a warrantless search of the arrested person and the area within the control of the one arrested. This is a categorical rule that does not depend on a case-by-case analysis of the threat to officer safety, or of evidence loss, such as from the natural dissipation of alcohol. But to determine how the exception applies in situations not envisioned when the Fourth Amendment was adopted, such as searches of cell phones found on an arrested person and blood and breath tests to measure blood-alcohol concentration, the United States Supreme Court has examined the degree to which the search intrudes upon an person's privacy and the degree to which such searching is needed for the promotion of legitimate governmental interests. See *Birchfield*, 136 S. Ct. at 2175-76. In *Birchfield*, the Court concluded that warrantless breath tests, under the Constitution, were permitted incident to arrests for drunk driving. The impact of a breath test on a person's privacy is

9

minimal, and the governmental need to control drunk driving is great. To the contrary, because warrantless blood tests for alcohol are significantly more *intrusive* than breath tests, the Court concluded that they were unreasonable. 136 S. Ct. at 2184-85. Basically, warrantless breath tests are permitted in all circumstances; warrantless blood tests, however, must be analyzed on a case-by-case basis.

Acknowledging this ruling, in *Ryce II*, the Kansas Supreme Court recognized that under *Birchfield*, the search-incident-to-arrest exception is "a categorical exception to the warrant requirement permitting an officer to demand a breath test from a person arrested for a DUI violation." 306 Kan. at 690-91. Thus, "'a breath test, but not a blood test, may be administered as a search incident to lawful arrest for drunk driving.'" 306 Kan. at 693. The court recognized the "validity of conducting a *breath* test in a DUI case where an arrest is made under the warrant exception of a search incident to lawful arrest." 306 Kan. at 693.

Here, Perkins was arrested for driving under the influence before the officer administered the breath test. Upon arrest, he was transported to the law enforcement center for testing. It does not matter that Perkins' consent for the breath test was coerced. For the results to be admissible, the State need only prove the applicability of *one* of the exceptions to the search warrant requirement. See *City of Los Angeles, Calif. v. Patel*, 576 U.S. __, 135 S. Ct. 2443, 2451, 192 L. Ed. 2d 435 (2015).

An example of the State pursuing more than one exception to the warrant requirement while attempting to admit evidence obtained from a warrantless search is found in *State v. Overman*, 301 Kan. 704, 710-12, 348 P.3d 516 (2015). In *Overman*, the court first pointed out that the State has the burden to show that a search and seizure was lawful. 301 Kan. at 710. In that case, the State had argued in district court that two exceptions to the search warrant requirement applied: search incident to a lawful arrest and probable cause plus exigent circumstances. The district court had held that the

10

evidence was admissible because it was obtained from a search incident to arrest. On appeal, due to a recent holding of the Kansas Supreme Court, the State conceded that the search incident to an arrest exception could not apply. Notwithstanding that, our Supreme Court proceeded to analyze the case under the probable cause plus exigent circumstances exception and upheld the district court's ruling admitting the evidence, saying it was correct albeit for the wrong reason. Succinctly, the court stated: "Clearly, then, to determine whether the trial court erroneously admitted illegally obtained evidence fairly includes the question of whether the State proved an exception that would validate an otherwise per se unreasonable search." 301 Kan. at 712. That is precisely the same question we must answer here.

If we apply those principles to this case, it becomes clear that this was a warrantless search and the State had the burden to show that it was lawful. It argued in the trial court that the consent exception to the search warrant requirement applied. On appeal, the law changed and the State could no longer pursue that exception but caselaw permits it to argue another exception—search incident to an arrest. Based on the holdings in *Birchfield* and *Ryce II*, the officer was permitted to conduct the breath test in this case as a lawful search incident to arrest. Thus, the results are admissible as evidence of Perkins' guilt. But our review does not end there.

*There is another reason why the tests results are admissible.*

Even if no exception to the search warrant requirement applied, the breath test result was admissible because the officer, in good faith, acted in reliance on the implied-consent statute before the Kansas Supreme Court ruled it unconstitutional. We turn now to consider the applicability of the exclusionary rule to the facts of this case.

Whether it is appropriate to suppress evidence from an unlawful search is a question of law. *State v. Daniel*, 291 Kan. 491, 496, 242 P.3d 1186 (2010). Because this

11

is a pure question of law on stipulated facts and is determinative of the case, we may consider the applicability of the good-faith exception for the first time on appeal. *State v. Schmidt*, 53 Kan. App. 2d 225, 233, 385 P.3d 936 (2016), *rev. denied* 306 Kan. 1329 (2017). In *Nece I*, the Kansas Supreme Court stated that it did not consider the potential applicability of the good-faith exception to Nece's case because the State did not brief the issue and conceded during oral argument that it was not seeking application of the exception. 303 Kan. at 897. Here, in contrast, the State contends in its supplemental brief that the good-faith exception should be applied. We will consider the question.

We note that several panels of this court have already found the good-faith exception applicable under similar facts. See, e.g., *Schmidt*, 53 Kan. App. 2d at 235-37; *State v. Kraemer*, 52 Kan. App. 2d 686, 699, 371 P.3d 954 (2016), *rev. denied* 306 Kan. 1325 (2017); *State v. McClellan*, No. 115,164, 2017 WL 839720, at *11-14 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* March 31, 2017; *State v. Steckline*, No. 112,242, 2017 WL 383343, at *7-8 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. 1330 (2017); *State v. Rincon*, No. 113,741, 2016 WL 3856670, at *4-5 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1329 (2017). We find the reasoning of these cases persuasive.

Under the exclusionary rule, unconstitutionally obtained evidence is excluded from the criminal trial of the victim of an illegal police search. Put plainly, the purpose of the exclusionary rule is to deter police misconduct; that is, to prevent the police from making illegal searches and seizures. But our Supreme Court has recognized a good-faith exception to the exclusionary rule when an officer acts in an objectively reasonable reliance on a statute that is later determined to be unconstitutional. See *Daniel*, 291 Kan. 490, Syl. ¶ 7. In such cases, suppression of the seized evidence does not serve the purpose of the rule. After all, the officer was obeying the law at the time of the search.

To address such questions, our gaze must shift from the officer's actions to the statute the officer was enforcing. The question becomes whether the statute, itself, can support an officer's objective reasonable reliance on it—not on the officer's subjective beliefs about the law. An officer's reliance on a statute is not objectively reasonable if:

- the statutory provisions are such that a reasonable law enforcement officer should have known the statute was unconstitutional; or
- in its enactment, the Legislature wholly abandoned its responsibility to pass constitutional laws.

*Daniel*, 291 Kan. 490, Syl. ¶ 8.

Here, we see no reason why the officer should have known K.S.A. 2012 Supp. 8-1025 was unconstitutional or that the implied consent advisory based on that law was coercive. At the time of the arrest, the officer was required by law to advise Perkins that failure to submit to a breath test could constitute a separate crime. The investigator here followed the law. Prior to *Ryce I* and *Nece I*, our courts had upheld the validity of consent obtained after giving the implied consent advisory. See, e.g., *State v. Johnson*, 297 Kan. 210, 222-23, 301 P.3d 287 (2013). Our Supreme Court did not invalidate the implied consent advisory until after the officer read it to Perkins. Obviously, suppression of the breath test result would not serve the purpose of the exclusionary rule—to deter police misconduct—because we find no police misconduct here. Nor is there any indication that the Legislature wholly abandoned its duty to enact constitutional laws in passing the statutes. After all, other states had similar statutes and continued to uphold them until the *Birchfield* decision. See *Schmidt*, 53 Kan. App. 2d at 235-37.

In summary, we hold the district court correctly denied Perkins' motion to suppress. The breath test here was constitutional as a search incident to arrest according to *Birchfield*. And the breath test result was admissible under the good-faith exception to the exclusionary rule.

13

Perkins' conviction is affirmed.

* * *

ATCHESON, J., concurring:  As outlined in Judge Hill's opinion, the good-faith exception to the exclusionary rule may be properly applied here and requires affirming the Ellis County District Court's denial of the motion Defendant Dustin Dean Perkins filed to suppress the results of the breath test administered to him after he was arrested for driving under the influence. That law entails settled principles governing the protections against unreasonable government searches and seizures in the Fourth Amendment to the United States Constitution. And it fully resolves the only disputed issue before us on appeal. I concur in that aspect of the majority opinion.

But we have no need to embark upon a mostly uncharted journey starting at the intersection of the search-incident-to-an-arrest exception to the Fourth Amendment's warrant requirement with the use of breathalyzers to measure blood-alcohol levels. The application of that exception to breath tests entails a new wrinkle in Fourth Amendment law recognized, though hardly resolved, in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2183-84, 195 L. Ed. 2d 560 (2016). We should leave the exploration for other cases where it offers the only pathway forward.

*Good-Faith Exception*

In light of the stipulated facts furnished the district court to resolve Perkins' motion to suppress, the appellate record affords us a sufficient basis to consider the good-faith exception for the first time. As Judge Hill explains, the arresting officer acted in conformity with Kansas law when he informed Perkins of the criminal penalties that would attach if he revoked his implied consent to a breath test and otherwise refused to comply with the testing. The Kansas Supreme Court has since held K.S.A. 2012 Supp. 8-1025, upon which the officer relied, to be unconstitutional, thereby rendering Perkins'

14

consent invalid. See *State v. Ryce*, 306 Kan. 682, 700, 396 P.3d 711 (2017). When a law enforcement officer reasonably conducts a search in reliance on a statute later held unconstitutional, federal and Kansas appellate courts have consistently recognized that the exclusionary rule, which bars evidence obtained in searches violating the Fourth Amendment, should yield to the good-faith exception. See *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *State v. Daniel*, 291 Kan. 490, Syl. ¶ 7, 242 P.3d 1186 (2010). That's because the purpose of the exclusionary rule is to deter law enforcement officers from knowingly violating the Fourth Amendment—a purpose ill-served when an officer conducts a search in good-faith reliance on and in conformity with a statute or a judicially issued warrant.

Perkins has argued the good-faith exception shouldn't apply in this case because K.S.A. 2012 Supp. 8-1025 deals with consent and implied consent rather than the administration of the breath test itself and is, therefore, legally cleaved from any search. The argument, however, depends upon a distinction between the legal basis for a warrantless search, here consent, and the actual search itself. The distinction is so artificial and abstract as to be of no genuine significance in considering the interplay of the exclusionary rule and the good-faith exception. See *Arizona v. Evans*, 514 U.S. 1, 15-16, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995) (good-faith exception applies when law enforcement officer conducts search immediately after arresting subject on warrant that court personnel erroneously failed to show had been withdrawn).

The good-faith exception reflects settled constitutional law and fully resolves the issue presented to us. We should stop there. As a matter of jurisprudence, we ought to refrain from addressing whether search incident to an arrest, as an exception to the warrant requirement of the Fourth Amendment, also supports the district court's ruling. Courts should decline to reach constitutional issues unless absolutely necessary. See *Lyng v. Northwest Indian Cemetery Prot. Assn.*, 485 U.S. 439, 445-46, 108 S. Ct. 1319, 99 L. Ed. 2d 534 (1988); *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 658, 367 P.3d

282 (2016). Here, the State has presented alternative constitutional arguments for affirming the district court. Since the good-faith exception alone satisfactorily undergirds the district court, we need not and should not weigh in on the other constitutional argument.

*Search Incident to an Arrest*

Because the majority engages the State's argument based on search incident to an arrest, I outline my trepidation with affirming on that ground. In *Birchfield*, the Court recognized that a breathalyzer test for alcohol may be conducted without a warrant as a search incident to an arrest. 136 S. Ct. at 2183. This represents a new and largely unexplored development in Fourth Amendment law. The *Birchfield* decision offers little guidance about how the development should be translated into practical application. In deciding Perkins' fate here, the majority doesn't offer any detailed discussion on that point, and its brevity fosters some troubling implications. See *State v. Perkins*, 55 Kan. App. 2d ___, Syl. ¶ 5 (No. 112,449, this day decided).

The majority points out that search-incident-to-an-arrest is a categorical exception to the warrant requirement of the Fourth Amendment. That simply means any valid arrest excuses government agents from obtaining a judicial warrant to search the individual arrested and the area in his or her immediate vicinity. The exception applies without regard to the particular circumstances, such as the crime for which the arrest is made or the apparent dangerousness (or lack of dangerousness) of the suspect. A categorical rule governing an application of the Fourth Amendment is uncommon; typically, the totality of the circumstances informs the constitutionality of a search or seizure. See *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) ("What is reasonable, of course, 'depends on all of the circumstances surrounding the search or seizure and the nature of the search and seizure itself.'") (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S. Ct. 3304, 87 L. Ed. 2d 381

16

[1985]); *State v. Wilson*, No. 115,554, 2017 WL 3444509, at *3 (Kan. App. 2017) ("A totality-of-the-circumstances analysis is frequently used to determine the constitutional reasonableness of government action under the Fourth Amendment.").

A search or seizure lawful at its inception may violate the Fourth Amendment if the government agents act unreasonably in the way they carry it out. See *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) ("[R]easonableness depends on not only when a seizure is made, but also how it is carried out."); *Williams v. City of Cleveland*, 771 F.3d 945, 950-51 (6th Cir. 2014) (manner in which pretrial detainees searched when booked into jail may be unconstitutionally unreasonable, even though some form of warrantless search permitted); *United States v. Edwards*, 666 F.3d 877, 883-84 (4th Cir. 2011) (evidence obtained during search incident to arrest suppressed because law enforcement officers' means of searching suspect violated reasonableness requirement of Fourth Amendment). The reasonableness of the means used to search a suspect following an arrest is not governed by a categorical rule. So, in short, not everything goes in searching a person after he or she has been arrested. The constitutionality of the means depends upon the typical totality-of-the-circumstances assessment. *Garner*, 471 U.S. at 8-9; *Williams*, 771 F.3d at 950. Courts recognize that government agents may use some degree of restraint or force to search a noncompliant arrestee. See *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Merricks v. Adkisson*, 785 F.3d 553, 560-61 (11th Cir. 2015); *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001).

As searches go, a breathalyzer test has some unusual attributes. Often, the evidence—a sample of the subject's breath—supports a misdemeanor charge of driving under the influence, as was true here, rather than a felony. The ultimate information sought actually is the subject's blood-alcohol level. And that information can be readily obtained in another entirely reliable way through a blood draw taken with (or in exigent circumstances without) a search warrant. A breathalyzer test cannot really be conducted

17

without the subject's physical cooperation in deeply exhaling into the machine—unlike, for example, a search of an arrestee's clothing for weapons or contraband.

In light of those attributes, I fail to appreciate how the search-incident-to-an-arrest exception to the warrant requirement provides an alternative legal ground to uphold the district court's denial of Perkins' motion to suppress. To be sure, Perkins had no constitutional right or other legal basis to refuse to provide a breath sample for testing. Given the nature of a breathalyzer test, he did, however, have the physical capacity to stymie the search simply by refusing to do so. We know that Perkins' consent was unlawful and, therefore, void. What we don't know from the factual record—and can't ever know—is what Perkins would have done had he been properly informed of the consequences of refusing to complete the breathalyzer test. He might very well have agreed to the test. But he might just as well have refused to cooperate. That's speculation, and because the State bears the burden of proof on a motion to suppress, speculation isn't good enough to carry the day. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016) (burden of proof).

Because Perkins had no legal right to refuse the testing, consent is actually irrelevant. What matters is Perkins' physical compliance or cooperation with the testing. The majority may be saying that the legally false and, thus, otherwise impermissibly coercive statements the officer made to Perkins are constitutionally unobjectionable to obtain his physical cooperation in the breathalyzer test. In other words, the majority could be relying on the notion government agents may use trickery or deception to carry out a search that does not require a judicial warrant. That's a Fourth Amendment wrinkle left unexplored in the majority opinion. And the wrinkle is sufficiently troubling that I would defer the entire issue for a case requiring full consideration of the potential ramifications.

If trickery or deceit may be deployed to effect a breathalyzer test, are there limits to the false representations government agents may make? Could the arresting officer

here have drawn his service weapon and threatened to shoot Perkins if he didn't provide a breath sample? What about a somewhat more plausible threat to use a Taser? The officer presumably would not have resorted to either, so they would be tricks. But a threat to inflict bodily injury or pain would seem to be unreasonable under the circumstances, especially given the crime, the evidence sought, and other readily available means of obtaining that evidence. Moreover, given the totality of the circumstances, the actual use of physical force to compel an arrestee to provide a breath sample presumably would cross the line of unreasonableness set in the Fourth Amendment.[*]

[*]Typically, an officer could obtain a search warrant for a blood draw as an alternative to a breathalyzer test. An arrestee could attempt to physically resist a blood draw. In that situation, one or more officers might be required to restrain the arrestee so a medical technician could take a blood sample. The constitutionally permissible restraint would be measured and relatively brief. But physical restraint alone would be insufficient to obtain a breath sample for a breathalyzer test. The physical force applied to the arrestee would be designed to compel him or her to cooperate by providing an adequate breath sample. In other words, the government agents' use of force would be aimed at physically coercing affirmative conduct from the arrestee rather than briefly inhibiting the arrestee's active resistance. The former more nearly partakes of impermissible infliction of pain or torture, and the latter of acceptable restraint.

I am unpersuaded that a search incident to an arrest, as an exception to the warrant requirement of the Fourth Amendment, provides an alternative rationale for the result in this case. In addition, it opens up how law enforcement officers might use the exception, either constitutionally or unconstitutionally, in attempting to administer breathalyzer tests in future cases. The exercise is fraught with the risk of implicitly promoting untoward government action and Fourth Amendment violations. We should confine ourselves to ruling based on the good-faith exception to the exclusionary rule and affirm the district court's denial of the suppression motion for that reason alone.