J-S60004-17

2017 PA Super 325

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MICKEY H. UPDIKE, | |
| Appellee | No. 1714 WDA 2016 |

Appeal from the Order October 10, 2016
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001111-2016

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY OLSON, J.: **FILED OCTOBER 13, 2017**

The Commonwealth of Pennsylvania appeals from the October 10, 2016 order granting Appellee Mickey H. Updike's suppression motion. In this case, we hold that blood draw evidence collected prior to June 23, 2016 is admissible under the good-faith exception to the exclusionary rule when a defendant only seeks suppression under the federal constitution. As Appellee did not seek suppression under the state constitution in this case, we reverse.

The factual background and procedural history of this case are as follows. On May 5, 2016, Detective Mark Britton sought to question an individual sitting in the rear passenger seat of Appellee's vehicle. When Detective Britton approached, he noticed an open beer can in the vehicle and asked Appellee if he had been drinking or using drugs. Appellee responded that he was not drinking but he had used heroin earlier in the

* Retired Justice specially assigned to the Superior Court

day. Appellee was transported to a local hospital and informed, by reading of the DL-26 form, that, if he did not consent to a blood draw, he would face increased criminal penalties. Appellee then agreed to the blood draw, which showed the presence of a controlled substance and metabolites in his blood stream.

On August 4, 2016, the Commonwealth charged Appellee via criminal information with four counts of driving under the influence ("DUI")-controlled substance.[1] On September 6, 2016, Appellee moved to suppress the blood draw evidence. He argued that the evidence was collected in violation of the Fourth Amendment of the United States Constitution. Thereafter, the trial court held a suppression hearing which encompassed this case and six other cases which raised similar legal issues. On October 10, 2016, the trial court granted the suppression motion. The Commonwealth filed this timely interlocutory appeal as of right.[2] *See* Pa.R.A.P. 311(d).

The Commonwealth presents three issues for our review:

1. Whether the [trial court] erred by ruling that the holdings of the Supreme Court of the United States in *Davis v. United States*,

---

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(i), 3802(d)(1)(ii), 3802(d)(1)(iii), and 3802(d)(2).

[2] On November 10, 2016, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On December 1, 2016, the Commonwealth filed its concise statement. On December 7, 2016, the trial court issued an order stating that its reasoning for granting Appellee's suppression motion was included in its October 10, 2016 opinion. All of the Commonwealth's issues were included in its concise statement.

[564 U.S. 229 (2011)] and *Illinois v. Krull*, [480 U.S. 340 (1987)[3]] were inapplicable under Article [I,] Section 8 of the Pennsylvania Constitution when [Appellee] had only made a claim under the Fourth Amendment of the Federal Constitution and had implicitly waived all claims under Article [I,] Section 8[?]

2. Whether the [trial] court erred by suppressing evidence that was seized based upon the officer's good faith reliance on appellate precedent[?]

3. Whether [Appellee's] inculpatory statements regarding his heroin use render any potential coercion inert as [Appellee] was ready and willing to admit to his heroin use[?]

Commonwealth's Brief at 6.[4]

All three of the Commonwealth's claims challenge the trial court's order suppressing the results of the blood draw. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). Our standard of review in addressing a challenge to a trial court's order granting a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *See Commonwealth v. Champney*, 161 A.3d 265, 271 (Pa. Super. 2017)

---

[3] Referred to as the *Davis/Krull* rule, the Supreme Court of the United States held that when the police conduct a search in objectively reasonable reliance upon binding appellate precedent or statutory authority which is later invalidated, the exclusionary rule does not apply. *Davis*, 564 U.S. at 249-250; *Krull*, 480 U.S. at 347.

[4] We have re-numbered the issues for ease of disposition.

(*en banc*) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "When the Commonwealth appeals from a suppression order, we . . . consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Young*, 162 A.3d 524, 527 (Pa. Super. 2017) (citation omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted).

In order to understand the issues presented in this case, it is necessary to review the change in the law which prompted Appellee to file his suppression motion. When Appellee was arrested and gave consent to the blood draw, the warnings regarding increased criminal penalties for refusing a blood draw (included in form DL-26) were legally correct. While Appellee's case was pending, however, the Supreme Court of the United States decided *Birchfield v. North Dakota*, 136 S.Ct 2160 (2016). In *Birchfield*, the Supreme Court of the United States considered whether a blood draw was subject to one of the limited exceptions to the Fourth Amendment's warrant requirement.

"In *Birchfield*, the Supreme Court of the United States held that police can compel a driver to give a breath sample without a warrant; however, police cannot compel a driver to provide a blood sample without first obtaining a search warrant except in certain limited circumstances." *Commonwealth v. Giron*, 155 A.3d 635, 637 n.1 (Pa. Super. 2017) (citation omitted). Although *Birchfield*, *Evans*, and *Giron* were DUI-alcohol cases, their reasoning is equally applicable in DUI-controlled substance cases. *Commonwealth v. Ennels*, 2017 WL 2954227, *3–5 (Pa. Super. July 11, 2017). Therefore, in the wake of *Birchfield*, the DL-26 warnings read to Appellee were partially incorrect insofar as they advised Appellee that he faced additional charges and/or enhanced penalties if he refused the blood draw.

Notwithstanding the issuance of *Birchfield*, the Commonwealth maintains that the results of Appellee's blood test withstand suppression since the good-faith exception to the exclusionary rule applies in cases decided under the Fourth Amendment of the United States Constitution, the sole legal ground cited and preserved by Appellee in support of his search and seizure claim before the trial court.[5] The Fourth Amendment of the United States Constitution provides that:

---

[5] The Commonwealth attempts to draw a distinction between the *Davis/Krull* rule and the good-faith exception to the exclusionary rule originally announced in *United States v. Leon*, 468 U.S. 897 (1984). The Supreme Court of the United States made clear in both *Davis* and *Krull* that it was merely applying the good-faith exception to the exclusionary rule and

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

It is well-settled that a blood draw is a search under the Fourth Amendment of the United States Constitution. *See Skinner v. Ry. Labor Execs.' Assn.*, 489 U.S. 602, 616–617 (1989); *Schmerber v. California*, 384 U.S. 757, 767–768 (1966). The fact that a blood draw is a search, however, does not end the inquiry. "As the text indicates and [the Supreme Court of the United States has] repeatedly affirmed, the ultimate touchstone of the Fourth Amendment is reasonableness." *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014) (internal quotation marks and citation omitted). For this reason, the Supreme Court of the United States has created a number of exceptions to the Fourth Amendment's warrant requirement. One such exception is if a defendant consents to a search. *See Illinois v. Rodriguez*, 497 U.S. 177, 183–186 (1990). Another such exception is a search conducted pursuant to exigent circumstances, *i.e.*, when police have insufficient time to seek a warrant because of an emergency. *See Michigan*

---

not announcing a new exception to the exclusionary rule. *See Davis*, 564 U.S. at 249 (this case "comes within the good-faith exception"); *Krull*, 480 U.S. at 346 (internal citation omitted) ("We granted certiorari to consider whether [the] good-faith exception to the Fourth Amendment exclusionary rule applies" in this case.). Thus, the *Davis/Krull* rule is just a specific example of the good-faith exception.

*v. Tyler*, 436 U.S. 499, 509 (1978). In *Missouri v. McNeely*, 569 U.S. 141 (2013), the Supreme Court of the United States held that the exigent circumstances exception rarely applies in DUI cases. *See id.* at 149-156. Consent, on the other hand, is a factual issue. For the reasons set forth below, we need not consider whether Appellee's consent to the blood draw in this case was voluntary. Instead, we conclude that, even assuming *arguendo* that his consent was involuntary, the blood draw evidence was admissible in this case.

"To effectuate the rights guaranteed under the Fourth Amendment, in the early part of the last century, the [Supreme Court of the United States] adopted the exclusionary rule, which bars the use of evidence obtained through an illegal search and seizure." *Commonwealth v. Arter*, 151 A.3d 149, 153 (Pa. 2016) (citation omitted). After approximately two decades of strict adherence to the exclusionary rule, the Supreme Court of the United States adopted the good-faith exception to the exclusionary rule.

Under the good-faith exception, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion [is not appropriate]." *Davis*, 564 U.S. at 238 (internal quotation marks and citations omitted). In *Davis*, the Court held that when a police officer conducts a search pursuant to binding appellate precedent, which is later overturned, the evidence seized

as a result of that search is admissible under the good-faith exception. ***Id.*** at 239-241. In ***Krull***, police conducted a warrantless administrative search pursuant to a state statute. Later, that statute was found to be unconstitutional. Nonetheless, the Supreme Court of the United States held that the good-faith exception to the exclusionary rule applied because the officer acted in an objectively reasonable manner in relying upon the subsequently invalidated statute. ***Krull***, 480 U.S. at 349-351. Therefore, evidence that is collected pursuant to a state statute that has previously been upheld by an appellate court, but which is later declared unconstitutional, is generally admissible under the good-faith exception.

The good-faith exception distinguishes the Fourth Amendment of the United States Constitution from its Pennsylvania counterpart since "it is settled that under Article I, Section 8 of the Pennsylvania [C]onstitution, a good[-]faith exception to the exclusionary rule does not exist." ***Commonwealth v. Frederick***, 124 A.3d 748, 756 (Pa. Super. 2015), *appeal denied*, 138 A.3d 2 (Pa. 2016) (citations omitted); ***Commonwealth v. Arnold***, 932 A.2d 143, 148 (Pa. Super. 2007) (citation omitted); ***Commonwealth v. Edmunds***, 586 A.2d 887, 888 (Pa. 1991). Although a concurring opinion authored by a member of this Court suggests that the good-faith exception may apply to exclusionary claims raised under Article I, Section 8 of the Pennsylvania Constitution in circumstances such as the ones present in this case, ***see Commonwealth v. Burgos***, 64 A.3d 641, 657

(Pa. Super. 2013) (Shogan, J., concurring), *appeal denied*, 77 A.3d 635 (Pa. 2013), the majority in **Burgos** explicitly rejected this statement and noted that "the good[-]faith exception does not exist [under] Pennsylvania [law]." **Id.** at 657 n.22 (citation omitted).

We have traced these distinctions between the Fourth Amendment of the United States Constitution and Article I, Section 8 because the precise legal authority Appellee cited in support of his motion has a significant impact upon the resolution of the instant appeal. In this case, Appellee only moved to suppress the blood draw evidence under the Fourth Amendment of the United States Constitution. **See** Appellee's Suppression Motion, 9/6/16, at 3. He did not move to suppress the evidence under Article I, Section 8 of the Pennsylvania Constitution. **See id.** Moreover, Appellee's counsel never mentioned the Pennsylvania Constitution at the suppression hearing.[6] When a defendant moves to suppress evidence only under the federal constitution, he or she waives any argument that the evidence should be suppressed under the state constitution. **See Commonwealth v. Rosa**, 734 A.2d 412, 420 (Pa. Super. 1999), *appeal denied*, 751 A.2d 184 & 751 A.2d 189 (Pa.

---

[6] In its brief before this Court, the Commonwealth cites a brief filed by Appellee after the suppression hearing was held. The docket does not reflect that such a brief was filed nor does the certified record contain such a brief. "[O]ur review is limited to those facts which are contained in the certified record and what is not contained in the certified record does not exist for purposes of our review." **Commonwealth v. Brown**, 161 A.3d 960, 968 (Pa. Super. 2017) (internal quotation marks and citation omitted). Therefore, we do not address whether Appellee preserved this issue in that non-existent filing.

2000). Thus, Appellee waived his argument that suppression was required under the Pennsylvania Constitution and the trial court erred by *sua sponte* raising the constitutionality of the blood draw under Article I, Section 8 of the Pennsylvania Constitution.

Having determined that the trial court erred in applying Article I, Section 8, we turn to whether the blood draw evidence was admissible under the good-faith exception incorporated under the Fourth Amendment's exclusionary rule. The Supreme Court of the United States did not directly address whether the good-faith exception is applicable in these circumstances. ***See Birchfield***, 136 S.Ct. at 2186 n.9 (vacating a defendant's conviction who had consented to a blood draw after being read partially incorrect warnings, similar to the DL-26 warnings, and remanding for a determination if the defendant's consent was voluntary notwithstanding the warnings and, if not, whether the good-faith exception applies). All of the Pennsylvania cases that have considered the now-invalid warnings found in the DL-26 form have done so under Article I, Section 8, not the Fourth Amendment. Thus, to our knowledge, there are no binding cases directly addressing this issue.

We find persuasive, however, the decisions of courts in other jurisdictions which have found that blood draw evidence collected in circumstances similar to the case *sub judice* was admissible under the good-faith exception to the exclusionary rule. The most extensive discussion of

this issue was undertaken by the Court of Appeals of Kansas in **Kansas v. Schmidt**, 385 P.3d 936 (Kan. App. 2016).[7] In that case, the court found that the good-faith exception applied and that the blood draw evidence was admissible. **Id.** at 943-944. The court reasoned that at the time of Schmidt's arrest, the police officer was required by statute to inform him that, if he refused a blood draw, he would be subjected to increased criminal penalties. **Id.** at 943. Moreover, the officer "had no reason to know that the implied consent advisories would be found impermissibly coercive [] after Schmidt's arrest, and [the statute] was not so clearly unconstitutional at the time of Schmidt's arrest that a reasonably well-trained officer would have known that it was unconstitutional." **Id.**

The same situation is present in the case at bar. At the time of Appellee's arrest, police were required to read Appellee the warnings contained in the DL-26 form which this Court and our Supreme Court had consistently upheld as constitutional. **See, e.g.**, **Commonwealth v. Riedel**, 651 A.2d 135, 139 & n.1 (Pa. 1994), *abrogated*, **Birchfield**, 136 S.Ct. 2160; **Commonwealth v. Carley**, 141 A.3d 1287 (Pa. Super. 2016), *vacated*, 2017 WL 203678 (Pa. Jan. 18, 2017). Police officers in Pennsylvania had no reason to believe that the Supreme Court of the United States would render the statute at issue unconstitutional in **Birchfield**.

---

[7] **Schmidt** only addressed the Fourth Amendment and did not address any state constitutional claims.

Furthermore, as noted in **Schmidt**, other jurisdictions had similar laws which had been upheld.

The United States District Court for the Northern District of Ohio reached a similar conclusion in **Greer v. Bradshaw**, 2016 WL 3555427 (N.D. Ohio June 30, 2016).[8]  In **Greer**, the petitioner was subject to a warrantless blood draw under Ohio law.  He argued that under **Birchfield**, this blood draw was unconstitutional and as such he was entitled to relief. The court rejected this argument and held that "[t]he blood draw was admissible under the good[-]faith exception[.]" **Id.** at *8 n.80.

In the aftermath of **Birchfield**, as **Schmidt** and **Greer** make clear, blood draw evidence obtained pursuant to subsequently-invalidated warning statements such as those contained in the DL-26 is admissible under the good-faith exception.  We conclude that the good-faith exception applied in this case because Appellee only sought suppression pursuant to the Fourth Amendment, not Article I, Section 8 of the Pennsylvania Constitution.  In light of our examination of the Commonwealth's first two claims, we need not consider its third claim.

Appellee argued before the trial court that even if the good-faith exception to the exclusionary rule applied, Detective Britton lacked probable cause and/or reasonable suspicion to believe that Appellee was driving under

---

[8] In **Greer**, the court was required to apply Fourth Amendment law and was not permitted to review any determinations regarding the state constitution. **See** 28 U.S.C. § 2254(a).

- 12 -

the influence of a controlled substance. This argument is without merit. Detective Britton saw Appellee driving the vehicle and Appellee admitted that he used heroin earlier that day. This provided Detective Britton with probable cause to arrest Appellee for DUI-controlled substance. As noted above, the blood draw evidence was admissible under the good-faith exception to the Fourth Amendment, the only ground raised for suppression by Appellee. As such, we conclude that the trial court erred by granting Appellee's suppression motion. We therefore reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2017