IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 23 WAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered 12/29/17 at No. 1357 |
| | : | WDA 2016, reversing the order of the |
| v. | : | Court of Common Pleas of Cameron |
| | : | County entered 8/19/16 at No. CP-12- |
| | : | CR-0000040-2015 and remanding |
| KAITLYN  N. WOLFEL, | : | |
| | : | |
| Appellant | : | SUBMITTED:  April 16, 2020 |

***OPINION***

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  JULY 21, 2020**

This interlocutory appeal concerns whether evidence of a blood alcohol test performed on an arrestee under suspicion of driving while intoxicated should be suppressed.  The main, substantive arguments center on the recent ruling, by the Supreme Court of the United States, that the Fourth Amendment proscribes warrantless blood draws secured on pain of enhanced criminal penalties for refusal.  This Court's present resolution, however, ultimately turns on issue preservation considerations.

While driving a vehicle in December 2014, Appellant struck two pedestrians, killing one and injuring the other.  She was arrested on suspicion of driving under the influence, and police transported her to a local health center for blood testing.  Prior to the blood draw, police advised Appellant that, if she refused to submit to the test, she

would be subject to enhanced criminal penalties pursuant to the Implied Consent Law.[1] *See* 75 Pa.C.S. §1547(b)(2)(ii). *See generally Commonwealth v. O'Connell*, 521 Pa. 242, 252, 555 A.2d 873, 878 (1989) (charging law enforcement officers with a duty, in connection with requests for chemical testing, to explain the consequences of a refusal). Appellant consented to the procedure, and the test yielded a blood alcohol content of .178 percent. Petitioner was charged with numerous criminal offenses, including homicide by vehicle while driving under the influence. *See* 75 Pa.C.S. §3735(a).

In 2016, while the present case remained at the pretrial stage, the Supreme Court of the United States issued its decision in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016). *Birchfield* held, among other things, that consent to a warrantless blood draw is vitiated when such assent follows the administration by police of a warning of enhanced criminal penalties upon refusal of the testing. *See id.* at ___, 136 S. Ct. at 2186 ("[M]otorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense"). Appellant then lodged a motion contending, in very general terms, that *Birchfield* required suppression of the blood evidence. *See* Motion to Suppress in *Commonwealth v. Wolfel* dated July 25, 2016, No. CP-12-CR-40-2015 (C.P. Cameron), at 1 ("[T]he United States Supreme Court, in *Birchfield v. North Dakota*, held that the Fourth Amendment does not permit warrantless blood tests.").[2]

---

[1] Act of June 17, 1976, P.L. 162, No. 81, §1 (as amended 75 Pa.C.S. §1547).

[2] Parenthetically, Appellant's initial claim for relief was facially overbroad, since the *Birchfield* Court explicitly allowed that warrantless blood testing might be valid if an exception to the warrant requirement applied. *See Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2184 ("Nothing prevents the police from . . . relying on the exigent circumstances exception to the warrant requirement" when there is insufficient time to secure a warrant).

At a hearing before the suppression court, Appellant's position was refined to encompass *Birchfield*'s recognition of the heightened coerciveness when an arrestee is warned of enhanced criminal penalties inuring upon a refusal of chemical testing. *See* N.T., Aug. 12, 2016, at 20. The Commonwealth, on the other hand, asserted that *Birchfield* shouldn't be retroactively applied to Appellant's circumstances, particularly given that police acted in good faith by merely advising her of the enhanced-penalty provisions embedded in the governing statutory regime. *See id.* at 4-5, 21-23.

The suppression court nonetheless awarded the exclusionary remedy, and the Commonwealth lodged an interlocutory appeal as of right. *See* Pa.R.A.P. 311(d). In an ensuing opinion, the suppression court found the contested legal issue to be one of first impression. The court noted, however, that retroactive application had been assumed in the Superior Court's decision in *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016) (awarding a new trial based on a *Birchfield* violation). Additionally, the suppression court reasoned as follows:

> In the instant case, the suppression hearing was held after *Birchfield* had been decided and had become the law of the land. Therefore, this Trial Court based its decision on the holding of *Birchfield* and knew to consider all the circumstances of the arrest, warnings, and blood draw. This Court had before it all the evidence which could come under the term, "totality of the circumstances." . . .
>
> It is also significant that the decision was based on the fundamental constitutional right of an individual to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution *and Pa. Const. Art. 1, §8*. It would be unconscionable for this court to hold that defendants who were deprived of such a fundamental right prior to June 23, 2016, and had not yet been tried, were not protected by the Fourth Amendment and that only those whose warrantless search took place after said date would be protected by its safety net.

*Commonwealth v. Wolfel*, No. CP-12-CR-40-2015, *slip op.* at 2-3 (C.P. Cameron Feb. 21, 2017) (emphasis added).

In the appeal proceedings, the Commonwealth discarded its position that *Birchfield* should be applied only prospectively. Instead, it presented a different argument that allowed for the retroactive application of *Birchfield* but would nonetheless avoid suppression, if credited. Specifically, the Commonwealth invoked the federal good-faith exception to the exclusionary rule.[3]

Notably, the Commonwealth's brief before the Superior Court offered the following circumspection:

> It would be disingenuous of the Commonwealth to fail to acknowledge the Pennsylvania Supreme Court in *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991) rejected *Leon* as an Article 1, Section 8 matter, and holding that Section 8 "does not incorporate a 'good faith' exception to the exclusionary rule." *Edmunds*, 586 A.2d at 905-06.

Brief for Appellant in *Wolfel*, No. 1357 WDA 2016 (Pa. Super.), 2017 WL 4682501, at *13 (recognizing that, in *Edmunds*, "the exclusionary remedy was deemed available even in a situation where police acted in good faith"). The Commonwealth, however,

---

[3] *See* Brief for Appellant dated June 9, 2017, in *Commonwealth v. Wolfel*, No. 1357 WDA 2016 (Pa. Super.), 2017 WL 4682501, at *12 ("The United States Supreme Court has consistently refused to mandate suppression of evidence where the evidence was obtained pursuant to a valid statute or controlling precedent, even if that statute or precedent is later overturned or declared unconstitutional." (citing, *inter alia*, *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984) ("[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalided search warrant cannot justify the substantial costs of exclusion."), and *Illinois v. Krull*, 480 U.S. 340, 349-53, 107 S. Ct. 1160, 1167-69 (1987) (holding that the federal exclusionary rule does not apply to evidence obtained by law enforcement officers who acted in objectively reasonable reliance on a statute authorizing warrantless administrative searches, which was later held to be constitutionally infirm))).

then made a point to clarify that it was in no way seeking an overruling of *Edmunds*. *See id.*

Instead, the Commonwealth urged that *Edmunds*' holding simply should not be applied in the present circumstances. Because Pennsylvania's implied consent regime had been repeatedly upheld by the courts prior to *Birchfield*'s issuance, the Commonwealth submitted, "interjection of Article I, Section 8 analysis and authority into this matter is unwarranted and this case should instead be viewed through the lens of the Fourth Amendment and its related caselaw." *Id.* at *14. According to the Commonwealth's brief, "[t]he alternative would be to hold that all of Pennsylvania's prior decisions finding that the Commonwealth's DUI testing regime did not run afoul of Article I, Section 8 were retroactively incorrect as a matter of state law." *Id.* The argument continued as follows:

> The Commonwealth submits that it would make much more sense to view *Birchfield* as holding that the prior state court decisions were incorrect under the Fourth Amendment and proceed accordingly, rather than interpret *Birchfield* as requiring the application of the more stringent and explicitly privacy-oriented Article I, Section 8 authority.

*Id.*

It is important to note that these contentions reflect an attempt to garner a broad-based legal ruling that *Birchfield* violations do not implicate Pennsylvania's variant of the exclusionary rule per *Edmunds*. In other words, the Commonwealth did not present a case-specific claim that Appellant had failed to advance a challenge under the Pennsylvania Constitution.

The Superior Court nonetheless raised this issue preservation concern of its own accord and reversed in a non-precedential opinion. *See Commonwealth v. Wolfel*, No. 1357 WDA 2016, *slip op.*, 2017 WL 6629411, at *4 (Pa. Super. Dec. 29, 2017). Initially,

the court repeatedly highlighted that, at the time at which Appellant lent her consent to the testing, the warnings about increased criminal penalties were "legally correct." *Id.* at *3; *cf. Commonwealth v. Olson*, ___ Pa. ___, ___, 218 A.3d 863, 868 (2019) (treating *Birchfield* as having announced a new rule of law). But again, the intermediate court decided the case based on issue-preservation considerations rather than on the merits.

In this respect, the Superior Court explained that Appellant had never sought suppression under Article I, Section 8 of the Pennsylvania Constitution, and therefore, the only relevant protections were those available under the Fourth Amendment to the United States Constitution. *See id.* at *4 (citing *Commonwealth v. Updike*, 172 A.3d 621, 626-27 (Pa. Super. 2017) ("When a defendant moves to suppress evidence only under the federal constitution, he or she waives any argument that the evidence should be suppressed under the state constitution." (citing *Commonwealth v. Rosa*, 734 A.2d 412, 420 (Pa. Super. 1999)))). In such circumstances, the Superior Court found, the good-faith exception to the federal exclusionary rule clearly applied. *Accord id.* (citing, *inter alia*, *Kansas v. Schmidt*, 385 P.3d 936, 943 (Kan. App. 2016)).

Appeal was allowed to consider the issue, as framed by Appellant, of: "Whether the Superior Court of Pennsylvania disregarded the controlling authority of *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), by reversing the trial court's decision suppressing the results of the testing of Petitioner's blood." *Commonwealth v. Wolfel*, ___ Pa. ___, 206 A.3d 491 (2019) (*per curiam*).[4]

---

[4] This issue is somewhat improvidently framed, given that the Superior Court decided the case based on waiver rather than "disregard[ing] the controlling authority of *Birchfield.*" *Id.* Nevertheless, the Commonwealth does not object to consideration of the Superior Court's actual holding; indeed, as developed below, the government now premises its own argument on a waiver claim. In these circumstances, we will read the question presented as being sufficiently broad to subsume issue preservation concerns.

Presently, Appellant argues, among other things, that the Superior Court erred in reversing the suppression court's ruling based on a *sua sponte* finding of waiver. *See* Brief for Appellant at 13 ("[T]he Commonwealth lost at the suppression hearing and waived any newly inserted arguments." (citing *Commonwealth v. Fant*, 637 Pa. 135, 157-58, 146 A.3d 1254, 1267-68 (2016) (Wecht, J., concurring))). Moreover, Appellant explains that, regardless of any failure on her part to invoke the Pennsylvania Constitution, the trial judge did so specifically in the opinion explaining his ruling. *Accord* Brief for *Amicus* Defender Ass'n of Phila. at 2 ("[T]he suppression court did rely on the state constitution (irrespective of appellant's presentation) . . .").

Appellant's *amicus*, the Defender Association of Philadelphia, proceeds to more closely develop the discussion about issue preservation. First, consistent with Appellant's lead argument, the Defender Association highlights the trial court's invocation of the Pennsylvania Constitution. The Defender Association further criticizes the Commonwealth's substitution, before the intermediate court, of reliance on the good-faith *exception* to the warrant requirement for its previous argument, in the suppression court, that the warrant requirement had *never attached* in the first instance. *See id.* at 9 ("Simply stated, retroactive application of *Birchfield* is a distinct issue from the remedial consequence (suppression or non-suppression) of an acknowledged *Birchfield* violation."). More broadly, the Defender Association argues that *Edmunds*' rejection of a good-faith exception to the warrant requirement should be enforced regardless of whether a defendant invokes the state charter. *See id.* at 13 ("Pennsylvania litigants should not be at peril of foregoing all meaningful remedial relief for failing to specifically allege a violation of the Pennsylvania Constitution.").

The Commonwealth, for its part, presently shifts its position once again, this time to a defense of the Superior Court's *sua sponte* waiver disposition. *See* Brief for

Appellee at 10 ("The crux of this matter is . . . the simple fact that Appellant Wolfel never invoked Article I, Section 8 of the Pennsylvania Constitution[.]"). Furthermore, the Commonwealth complains -- also for the first time in this litigation -- that "[t]he suppression court's apparent belief that [a claim under the Pennsylvania Constitution] was properly before it was factually incorrect." *Id.* at 16. Conveying no apparent appreciation of its own troubles with issue preservation, the Commonwealth emphasizes that "[i]ssues not raised in the lower court are obviously waived and cannot subsequently be raised for the first time on appeal." *Id.* (citing Pa.R.A.P. 302(a)). Ultimately, there are several suggestions, in the Commonwealth's brief, that *Birchfield* itself should be left entirely to the federal arena. *See, e.g.*, *id.* (urging that we should "view *Birchfield* as holding that the prior state court decisions affirming Pennsylvania's implied consent and DUI enforcement regime were incorrect under the Fourth Amendment . . . , rather than interpret *Birchfield* as requiring the retroactive application of the more stringent and explicitly privacy-oriented Article I, Section 8 authority").

The Fourth Amendment rulings of the Supreme Court of the United States, however, establish the baseline for the protections afforded by Article I, Section 8 of the Pennsylvania Constitution. *See, e.g.*, *In re Fortieth Statewide Investigating Grand Jury*, 647 Pa. 489, 514 n.23, 190 A.3d 560, 575 n.23 (2018) ("[A]nalogous provisions of the federal Constitution establish a minimum floor for the protection due under the state charter."). Accordingly, any suggestion that Article I, Section 8 does not subsume *Birchfield*'s substantive constraints must be disapproved.

On the other hand, we also reject the Defender Association's premise that this Court should apply principles arising under Article 1, Section 8 to claims predicated solely on the Fourth Amendment to the United States Constitution. While, unfortunately, criminal defense attorneys are sometimes remiss in failing to apprehend

the material distinctions in the application of the respective federal and state charters, the relevant, controlling difference -- *i.e.*, the expanded application of the state exclusionary rule -- is now apparent and manifest. Moreover, this Court has no power to alter settled Fourth Amendment law as announced and maintained by the Supreme Court of the United States.

Ultimately, however, we agree with Appellant and her *amicus* that the Commonwealth waived its challenge to Appellant's failure to raise a claim under Article I, Section 8, by failing to challenge the suppression court's explicit invocation of that provision before the Superior Court. Notably -- upon the Commonwealth's entreaty -- this Court recently enforced waiver against a criminal defendant for failing to properly raise and preserve a *Birchfield*-related issue. *See Commonwealth v. Hays*, ___ Pa. ___, ___, 218 A.3d 1260, 1266-67 (2019). Here, we afford evenhanded treatment to the Commonwealth.[5]

Since the Superior Court's *sua sponte* finding of waiver on Appellant's part is unsustainable, we will remand for that court to effectuate the alternative resolution to which the intermediate court itself referred. *See Wolfel*, No. 1357 WDA 2016, *slip op.*, 2017 WL 6629411, at \*4 n.8 (explaining that, absent the asserted waiver on Appellant's part, "we would have affirmed the suppression court's Order").[6]

---

[5] *Accord Commonwealth v. Williams*, 636 Pa. 105, 145 n.23, 141 A.3d 440, 464 n.23 (2016) (concluding that the Commonwealth's waiver argument itself was waived pursuant to Rule 302(a), where it was advanced for the first time on appeal, with the Commonwealth in the position of an appellant); *In re J.M.*, 556 Pa. 63, 83, 726 A.2d 1041, 1051 (1999) (finding waiver on the part of an appellee, who previously had been the appellant in the Superior Court, where that party had failed to raise a particular issue in the intermediate court).

[6] According to Justice Dougherty, the waiver doctrine should not apply, because the Commonwealth's brief in the Superior Court specifically noted that Appellant had couched her suppression motion solely as a *Birchfield* issue and submitted, therefore, (continued…)

The order of the Superior Court is reversed, and the matter is remanded for further proceedings consistent with this Opinion.

Justices Todd, Donohue and Mundy join the opinion.

Justice Wecht files a concurring opinion in which Justice Baer joins.

Justice Dougherty files a dissenting opinion.

---

(…continued)

that "interjection of Article I, Section 8 analysis and authority into this matter is unwarranted and this case should instead be viewed through the lens of the Fourth Amendment and its related caselaw." Dissenting Opinion, *slip op.* at 3 (quoting Brief for Appellant in *Commonwealth v. Wolfel*, No. 1357 WDA 2016, 2017 WL 4682501 (Pa. Super.), at *14). That brief, however, made it immediately apparent that this observation was part and parcel of the Commonwealth's overarching focus on securing a broad-based ruling that *Birchfield* violations do not implicate Pennsylvania's variant of the exclusionary rule per *Edmunds.*

In this regard, immediately after the language quoted by Justice Dougherty, the Commonwealth urged that, "[t]he alternative," to viewing the case through the lens of the Fourth Amendment, "would be to hold that all of Pennsylvania's prior decisions finding that the Commonwealth's DUI testing regime did not run afoul of Article I, Section 8 were retroactively incorrect as a matter of law." *Id.* at *14. This, of course, would not have been the alternative at all, had the Commonwealth meant merely to raise a case-specific objection to the trial court's *sua sponte* reference to Article I, Section 8. Instead, the matter would have represented a garden-variety waiver claim having nothing to do with the validity of any previous decision by any court.

The Commonwealth's brief continued to urge that "it would make much more sense to view *Birchfield* as holding that the prior state court decisions were incorrect under the Fourth Amendment and proceed accordingly, rather than interpret *Birchfield* as requiring the application of the more stringent and explicitly privacy-oriented Article I, Section 8 authority." *Id..* Along these lines -- beginning with the summary of its argument and continuing throughout its brief -- the Commonwealth consistently pursued a rule permitting a good-faith exception to the exclusionary rule for *Birchfield* violations in spite of *Edmunds*, not a ruling that the trial court erred in its *sua sponte* reliance on the Pennsylvania Constitution. There simply are no arguments, in the brief, stated in the alternative.